[Crim. No. 623.    Third Appellate District.—August 4, 1922.]

## THE PEOPLE, Respondent, v. WALTER WISMER, Appellant.

[1] CRIMINAL LAW—OPINION OF JUROR—SOURCE OF—DISQUALIFICATION.
Where a juror in a criminal case has formed an opinion on the merits of the case which has originated or been generated from any other than the three sources named in section 1076 of the Penal Code, he is disqualified from sitting in the case as a juror, and he cannot qualify himself as a juror howsoever emphatic may be his declaration that he can and will disrobe his mind of such opinion and give to the defendant a fair trial and so return a verdict strictly in accord with the evidence and the law as it is stated by the court.

[2] ID. — CRIMINAL SYNDICALISM — DISQUALIFICATION OF JURORS FOR ACTUAL BIAS—DENIAL OF FAIR TRIAL.—In a prosecution under the Criminal Syndicalism Act for knowingly having become a member of the Industrial Workers of the World, a trial by jurors who state on their *voir dire* that, at a previous trial of a similar offense in which they sat as jurors, they formed the opinion that the organization of which the defendant is charged with being a member was an unlawful organization, cannot be said to be characterized by that absolute fairness which the law intends and declares that all persons, whatever may be their position in life, according to the social scale or standard, are entitled.

[3] ID.—DENIAL OF CHALLENGE FOR ACTUAL BIAS—SECTION 4½ OF ARTICLE VI OF THE CONSTITUTION INAPPLICABLE.—Where a defendant in a criminal action, notwithstanding he has exercised all his peremptory challenges, is compelled to accept a juror who is disqualified by reason of actual bias, section 4½ of article VI of the constitution has no application.

APPEAL from a judgment of the Superior Court of Sacramento County.  C. P. Vicini, Judge Presiding.  Reversed.

The facts are stated in the opinion of the court.

R. W. Henderson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

Disqualification of jurors who have served in same or similar case, notes, 4 **Ann. Cas.** 965; 68 **L. R. A.** 875.

HART, J.—The indictment, in two separate and distinct counts, charged the defendant with the violation of certain provisions of the act of the legislature of 1919, known as the "Criminal Syndicalism Act" (Stats. 1919, p. 281). Both counts were framed upon the fourth subdivision of section 2 of said act. The first charged that the defendant, in November, 1921, at the city of Sacramento, did willfully, unlawfully, and feloniously organize and assist in organizing an organization known as the "Industrial Workers of the World," sometimes known and referred to as "I. W. W." and the "One Big Union," being a society, group, or assemblage of persons organized and assembled to advocate, teach, and aid and abet criminal syndicalism, as said crime is defined in section 1 of said act of the legislature. In the second count, the defendant is accused of being, at the time and place above mentioned, a member of said organization, having become so willfully, unlawfully, feloniously, and *knowingly.*

On the conclusion of the presentation of the people's case, the defendant, through his counsel, moved for a dismissal of the first count on the ground that there was no evidence to support it, and the motion was granted. The case was finally submitted to the jury·on the second count and a verdict of guilty of the crime so charged was returned.

The appeal is by the defendant from the judgment of conviction.

The legal validity of the verdict is challenged on four different grounds, to wit: 1. That error was committed in the denial of challenges to certain jurors on the ground of actual bias; 2. That "practically all the literature introduced by the prosecution" for the purpose of showing the character of the organization of which the defendant is accused of becoming and being a member knowing it to advocate, teach, and aid and abet criminal syndicalism, was permitted to be received in evidence in the absence of proof having first or at all been made that said literature was printed, published, and distributed by and under the authority of the Industrial Workers of the World; 3. "That the court erred in refusing to permit the defendant to read to the jury the whole of the pieces of literature portions of which had been read on behalf of the prosecution;" 4. That the verdict is contrary to the evidence "in that there was

no testimony from which it could be deduced that the defendant ever had any knowledge of the unlawful purpose of the organization.''

A careful examination of the record and a like consideration of the points urged for a reversal have led us to the conclusion that points 2, 3, and 4, in the order in which they are above enumerated, are devoid of merit. The cause must be reversed, though, because of rulings disallowing challenges to certain prospective jurors.

Among the veniremen called to the jury-box were seven tentative jurors who stated, upon their *voir dire* examination, that they had sat as jurors in a case or in cases previously heard in the superior court of Sacramento County and in which the accused were tried on indictments charging them with the identical crime charged in the indictment against the defendant here and of which he stands convicted. These jurors each declared that, as to the particular case in which they had served as jurors, they had formed the opinion that the organization of which it is alleged in this indictment that the defendant herein is a member was an unlawful organization. This opinion, each of these jurors stated, was formed from and upon the evidence adduced in the case or cases in which he (or she) had sat as a juror. Each of said jurors was challenged on the ground of actual bias as the same is defined in section 1073, subdivision 2, of the Penal Code, viz.: ''For the existence of a state of mind on the part of the juror in reference to the case, . . . , which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party.'' In each of these instances, the challenge was disallowed after, upon an issue thereon being made by the denial of the challenge by the people, the district attorney had further examined the jurors and thus elicited from them the statement that they could and would free their minds from anything that they had heard at the previous trial or trials in which they had served as jurors and involving the same issue that is involved in this case; that they could and would try the defendant fairly and impartially, according to the evidence and the law as stated to them by the court, notwithstanding the opinion they had formed upon evidence that they had heard at the previous trial or trials that the organization of which the defendant

is accused of being a member was "an unlawful organization."

The record shows that all the seven jurors, with the exception of juror Fiege, were peremptorily excused by the defendant. The record further shows that said Fiege was not excused but was sworn to try the defendant and that he did try him. It is further made to appear by the record that, upon completion of the panel, the defendant had exhausted his full legal quota of peremptory challenges. In fact, the record shows this: That, after the panel had been completed—that is, after twelve jurors were in the box after the allowance of challenges, peremptory and for cause —the following occurred: "The Court, addressing counsel for the defendant: You are satisfied with the jury, Mr. Henderson? Mr. Henderson: Our peremptories are exhausted, your Honor. Are there any more, Mr. Clerk? I would want to be absolutely sure. Clerk: Yes; I will call these names." The clerk thereupon read to court and counsel the names of ten persons (of whom six were among the seven who had served as jurors in a trial previously had upon an indictment charging the accused with the offense for which the defendant was on trial) who had been peremptorily excused by the defendant.

Thus it is plainly made to appear by the record that the defendant exhausted the number of peremptory challenges to which he is entitled under the law (Pen. Code, sec. 1070), with juror Fiege, who had sat in a similar trial previously, and had stated that therein he had formed the opinion that the Industrial Workers of the World constituted "an unlawful organization," and who was unavailingly challenged by defendant for actual bias, among those sworn to try the defendant.

[1] It is clear that Fiege was not legally eligible to serve as a juror in this case, and that the defendant, having exhausted his peremptory challenges, was compelled to accept said Fiege as one of the jurors to try the question of his (defendant's) guilt or innocence. Nor was Fiege's disqualification such as that it could be cured by his asseverations that he could and would in the trial of the defendant remove from his mind any impressions or opinion he may have obtained from hearing a previous trial of precisely a similar nature and that he would be able to ac-

cord to the accused a perfectly fair and impartial trial. He doubtless honestly believed that he could so try the defendant, and it may be that he could. But the law does not so view such a situation and hence in effect declares that a defendant in a criminal case or a party litigant in a civil case is not required to take the chance that a person thus forming an opinion as to the merits of the case will give to him that fair and impartial trial which the law intends and contemplates that he shall have.

Section 1076 of the Penal Code, in part, provides: " . . . In a challenge for actual bias, the cause stated in the second subdivision of section ten hundred and seventy-three must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety; provided it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters to be submitted to him."

The above provision involves a departure from the common-law rule, as far as it goes, and, to render a person who has formed an opinion as to the merits of a case eligible to serve as a juror therein, it must be shown that such opinion has been formed upon information received from one or more of the three sources named in said section; so, where a juror has formed an opinion on the merits of the case which has originated or been generated from any other than any of the three sources named in said section, he is disqualified from sitting in the case as a juror, and he cannot, as he may in the cases specified in section 1076, qualify himself as a juror howsoever emphatic may be his declaration that he can and will disrobe his mind of such opinion and give to the defendant a fair trial and so return a verdict strictly in accord with the evidence and the law as it is stated by the court. (*People* v. *Wells,* 100 Cal. 229 [34 Pac. 718]; *People* v. *Miller,* 125 Cal. 44, 46 [57 Pac. 770]; *People* v. *Helm,* 152 Cal. 532, 536 [93 Pac. 99]; *People* v. *Riggins,* 159 Cal. 113 [112 Pac. 862].)

In the Wells case, in which a juror stated that he had an opinion on the merits of the case, it is said: "At common law a juror who entered the box with an opinion as to

the guilt or innocence of the accused was *ipso facto* disqualified from acting in the case, but section 1076 of the Penal Code of this state creates an innovation upon this principle and declares an exception to the common law rule. But in order that a juror disqualified at common law, by reason of having previously formed an opinion as to the guilt or innocence of the accused, may come within the provisions of the statute, it must appear affirmatively to the court from the evidence before it that such opinion is formed from public rumors, or statements of public journals, or common notoriety; and it must further appear to the court by the juror's declarations under oath that, notwithstanding such opinion, he can and will act fairly and impartially upon the matter to be submitted to him.''

But the court added that, where the opinion of the juror was founded upon information or matters coming from a source other than any of those designated in section 1076 of the Penal Code, ''that fact of itself is a disqualification under the law, and it is a disqualification even though the juror should declare to the court under oath that, notwithstanding such opinion, he would and could act fairly and impartially upon the matters to be submitted to him. The juror,'' proceeds the court in that case, ''would not only be disqualified at common law, but disqualified under the Penal Code, for he has not brought himself within the provisions of section 1076, as those provisions require an affirmative showing to the court that his opinion is based upon public rumor, common notoriety, or statements from public journals.''

In *People* v. *Miller, supra*, the juror stated that he had an opinion upon the question of the defendant's guilt or innocence based upon statements made to him by persons with whom he had been acquainted for many years, and whom he believed told him the truth about the case, and that he believed them. He stated, however, that he could and would act fairly and impartially in trying the case and obey the instructions of the court. The challenge by defendant for actual bias was denied by the trial court, and on appeal, in considering the assignment based upon that ruling, the supreme court said: ''The juror went into the box with an opinion that the defendant was guilty. Such condition of the juror's mind was an absolute disqualifica-

tion at common law. Under the Penal Code of this state, a single exception is declared in section 1076. This juror was clearly disqualified, unless he came within the provisions of the aforesaid section,'' and it was held, as obviously no other conclusion could be declared under the facts, that the juror did not come within the exception provided in section 1076, and that he was, therefore, disqualified beyond any power to qualify him under the law.

In *People* v. *Helm, supra,* the court, in discussing the subject in hand, said: ''If it is not made to appear that the juror's opinion is based entirely upon one or all of the three sources of information above named in sec. 1076; if it is shown that his belief has its origin in any other source than one of the three enumerated, he is at once as thoroughly disqualified under the code as he would have been at common law.''

Besides the above cases, see *People* v. *Riggins,* 159 Cal. 113 [112 Pac. 862], and the cases therein cited to the point under discussion at page 119.

In all the above cases the opinion of the juror was based upon information derived from the statements of parties not under oath or made under circumstances in which no duty rested upon the jurors to test and determine their verity. [2] In this case, the jurors referred to, having acted as jurors in a previous trial in which the identical offense charged here constituted the groundwork of the prosecution, founded their opinions as to the character of the organization of which the indictment charges the defendant with being a member, upon sworn testimony, the truth or falsity of which they were required to determine. And the opinion of the said jurors so formed was upon one of the essential elements of the crime charged against the accused. Juror Fiege, who was forced upon the defendant as one of the arbiters of his fate by the ruling denying the defendant's objection to him as a juror in the case on the ground of actual bias, stated that, at a previous trial of a similar offense, he formed the opinion that the organization known as the Industrial Workers of the World was an unlawful organization or assemblage or society of persons. In other words, the rational deduction from the statement of said juror was that he had previously formed the opinion upon sworn testimony that the organization of which the accused

was charged with *knowingly* becoming and being a member, was an organization which advocated and aided and abetted the commission of the crime of criminal syndicalism, as defined by the Statute of 1919, *supra*. And, since the two principal witnesses called by the people to prove the claimed criminal character of said organization, both former members thereof, testified that they had given similar testimony in previous trials of the same charge against others, in the superior court of Sacramento County, it may be that the opinion formed and entertained by Fiege and the other six jurors who stated that they had sat in previous trials of precisely the same issue, was upon the testimony of those very witnesses.

Clearly, a trial by jurors whose minds, when entering the jury-box, were in the condition in reference to that element of the case that the minds of Fiege and the other six were in cannot be said to be characterized by that absolute fairness to which the law intends and declares that all persons, whatever may be their position in life, according to the social scale or standard, are entitled. There was one other element only to be established to make out a case against the accused, and that was the fact that he was a member of said organization at the time mentioned in the indictment, and this element was removed from the case as an issue by the admission of the defendant, extrajudicially and also before the jury, that he was at the times referred to in the indictment a member of said organization. And thus this case itself furnishes a forcible illustration of the singular wisdom and justness of the law in hedging the great and fundamental right of trial by jury with such restrictive safeguards as will insure to every person prosecuted for a public crime a trial by a jury composed of persons whose minds are not, from the beginning, infected with the slightest predilection for a particular result in the case and who, therefore, can give to him as well as to the people the benefit of their unbiased and unprejudiced judgment on the matters submitted to them.

The attorney-general states in his brief that it does not appear from the record but that the defendant was satisfied with the jury as it was constituted. We do not know of any other more effectual way in which a party to an action could express his dissatisfaction with a jury or a particu-

lar juror than by challenging such jury or juror for cause or peremptorily. Indeed, this is the only way pointed out by the code by which such dissatisfaction may be made known to the court. And the record here plainly shows, as we have pointed out, that the defendant did thus express his dissatisfaction with Juror Fiege, but that he was required to accept said juror as one of his triers because his right to peremptorily excuse tentative jurors had been exhausted. It is no reply to say that the defendant could have used one of his peremptories upon Fiege instead of upon one of the veniremen that had not formed an opinion upon one of the essential ingredients of the offense charged upon sworn testimony in a previous trial of a like offense. The record discloses that there were certain of the prospective jurors who had formed opinions upon the merits of the case from information coming from a different source from that of sworn testimony, and against some of these sitting in judgment upon him the defendant objected at the expense of the loss of some of his peremptory challenges. And it is to be assumed that he preferred to take a chance for a fair trial by Fiege than to take such a chance with some of the jurors peremptorily excused by him who had not heard testimony as to the character of the organization in question at a previous trial; and this he had the right to do without being required to sacrifice or surrender his right to complain of the act of the court resulting in the forcing upon him of an objectionable juror. The fact that he did not peremptorily excuse Fiege, when he might have done so at the expense of having some other juror on the panel equally as objectionable to him, although not because of having served on a jury at a previous trial for a similar offense, is not to be construed as the expression by him of satisfaction with Fiege or the jury as empaneled or as a waiver by him of Fiege's disqualification. The difficulty with the whole situation was that the defendant was compelled through erroneous rulings on his challenges for cause to use six of his peremptory challenges, with the result that, having finally exhausted all such challenges allowed him by law, a disqualified juror was forced upon him.

[3] Section 4½ of article VI of the constitution has no application to the situation presented here. The right of

trial by jury is fundamental—a right which came to us from the common law and as such guaranteed by the constitution—and inseparably connected therewith (indeed, it is of the very essence thereof) is the right to a trial by a jury consisting of unbiased and unprejudiced persons. Hence, where, as here, it unquestionably appears that error has been committed in the disallowance of a challenge of a juror for actual bias, and the record discloses nothing indicating that the error was legally cured or in effect waived by the challenging party, the case cannot be saved from the fate of a reversal by an appeal to the terms of said section of the constitution. This provision was not inserted in the organic law with the purpose of impairing the fundamental rights of the citizen or in any measure hampering the exercise or enjoyment thereof. Indeed, those rights cannot be destroyed or impaired so long as our present system of government exists.

It may be that the result of this decision will subject the people to great inconvenience in the prosecution of cases coming under the criminal syndicalism law, especially as to cases founded on subdivision 4 of the second section of said act, in that, where there are many such cases in a county, the entire body of the people as citizens possessing the general qualifications for jury service might ultimately become disqualified from sitting as jurors in such a case by reason of having served as jurors in cases of like nature previously tried. If such shall be the result of this decision, it is to be greatly deprecated. But such a plea, which is nothing more than *argumentum ab inconvenienti,* can never be allowed except in those cases only where the law which is being construed is, by reason of the ambiguity of its language, of doubtful meaning, in which case it is permissible, if necessary, to give it a construction which, while not involving a departure from its general purpose, will with greater certainty make its application conform to public convenience or result in bringing about a more effectual achievement of the real ends of its enactment. In the present case, however, we are confronted with no such condition. The law relating to the right of trial by jury is not in such dubious language or doubtful or equivocal phrases as that its real meaning is enveloped in obscurity. The code sections are merely regulatory of the exercise of

the right of trial by jury as that right is guaranteed by the constitution, and involve only a reaffirmation or restatement of the common-law rules with respect to that subject. Those rules are framed in simple and readily understandable language. Moreover, in thousands of decisions of the courts of last resort they have as often been declared to mean precisely what their simple language plainly implies. Therefore, the inconvenience which may follow from their application according to their obvious tenor and intent cannot support an argument addressed to a construction which would impart to them a meaning different from that attributed to them here. We may, in this connection, add that section 1076 of the Penal Code, although in a measure in derogation of the common-law rule, was not intended to deny to litigants a trial by jury composed of persons without bias or prejudice as to the merits of the case or the parties to the issue to be tried.

The conclusion is that the defendant was, as a matter of law, denied the fair and impartial trial to which he is entitled, and the judgment is, therefore, reversed and the cause remanded.

Finch, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 2, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, was acting.
58 Cal. App.—44