[Crim. No. 736. Third Appellate District.—October 31, 1923.]

In the Matter of the Application of JACK CAMPBELL et al. for a Writ of Habeas Corpus.

[1] Constitutional Law—I. W. W.—City Ordinance — Unconstitutionality of.—A city ordinance declaring it unlawful for any person within the city "to print, publish, edit, issue, distribute, circulate, sell or offer for sale or give away, or to have in his or her possession, any membership card in, or any book, paper, pamphlet, document, handbill, poster, or any written or printed matter in any form whatever, containing or carrying any written or printed matter advocating, advising, teaching, containing or claiming to contain, set forth, explain or narrate the doctrines, precepts, principles, teachings," etc., "of the Industrial Workers of the World, or the I. W. W., or any branch" thereof, "or the I. W. W., by whatever name the same may be known or called," is violative of section 9 of article I of the constitution, guaranteeing to every citizen the right freely to speak, write, and publish his sentiments on all subjects, and involves an invidious discrimination as against a particular organization, and is also invalid because it presupposes that said organization is a combination of persons organized or associated together for the purpose of teaching and advocating the commission of unlawful acts or lawful acts by unlawful methods.

[2] Id. — Enactment of Penal Statutes — Essential Element of Crime — Assumption of Existence — Power of Legislature.— The legislative department transcends its constitutional powers when in the enactment of penal statutes it proceeds upon the theory that an essential element of a crime, whether falling within the category of crimes *mala in se* or that of crimes *mala prohibita*, may be assumed to exist without proof of its existence, save, perhaps, in a few exceptional cases coming within or peculiarly subject to the control of the power of police.

[3] Criminal Syndicalism—Illegal Purpose of I. W. W.—Essential Element of Crime—Question for Jury.—The alleged or claimed criminal or illegal purpose of the I. W. W. organization is an essential element of the crime either of selling or distributing or circulating its literature, containing a statement of the principles of the organization, or of being a member thereof, and that question is one to be determined by the jury.

1. Validity of legislation directed against social or industrial propaganda deemed to be of a dangerous tendency, notes, 1 A. L. R. 336; 20 A. L. R. 1543.

[4] ID. — PROSECUTION UNDER SYNDICALISM ACT — THEORY OF — The theory must always be, to support a criminal prosecution under the Syndicalism Act, or any valid local ordinance whose general object is the same as that of said act, that the organization in its nature "is a criminal conspiracy to change industrial control and government by unlawful and criminal methods."

PROCEEDING on Habeas Corpus to secure release from custody under commitment for alleged violation of city ordinance. Writ granted.

The facts are stated in the opinion of the court.

T. F. Allen and R. W. Henderson for Petitioners.

James W. Henderson, City Attorney, and Hans C. Nelson for Respondent.

HART, J.—Petitioners, claiming that they are illegally restrained of their liberty by the sheriff of Humboldt County, ask this court for an order discharging them from such restraint through the writ of *habeas corpus*.

The return of the sheriff discloses that his authority for holding and restraining the petitioners is derived from an order, made by the police judge in and for the city of Eureka, Humboldt County, committing the petitioners to his custody pending their trial for the alleged violation of the provisions of section 4 of Ordinance No. 813 of said city, or until a bail bond in the sum of five hundred dollars each was furnished and duly filed by them.

The question presented here is whether section 4 of the ordinance, under which the petitioners are being held, represents the exercise of valid legislative power. So much of said section as is pertinent to the present consideration reads as follows:

"It shall be unlawful for any person within the City of Eureka to print, publish, edit, issue, distribute, circulate, sell or offer for sale or give away, or to have in his or her possession, any membership card in, or any book, paper, pamphlet, document, handbill, poster, or any written or printed matter in any form whatever, containing or carrying any written or printed matter advocating, advising, teaching, containing or claiming to contain, set forth, explain or narrate the

doctrines, precepts, principles, teachings, dogma, songs or sentiments, work, acts or activities of the organization, body or group of individuals known as the Industrial Workers of the World, or the I. W. W., or any branch, subdivision, section or local organization affiliated with or a part of or in any way connected with said Industrial Workers, or the I. W. W., by whatever name the same may be known or called.''

Section 8 of the ordinance makes the violation of any of its provisions a misdemeanor and the offender subject to a fine of five hundred dollars, or to imprisonment for not exceeding six months, or to both such fine and imprisonment.

The complaint filed against the petitioners in the police court and upon which they are being held in the custody of the sheriff is substantially in the language of section 4 of said ordinance.

Manifestly, if section 4 of the ordinance is invalid, or defines no public offense, the complaint, which is based thereon, is likewise invalid, or, in other words, fails to state a public offense.

The contention of the petitioners is that said section involves such special legislation as is inhibited by our constitution, is wanting in uniformity of operation, and is, therefore, discriminatory in that it is specifically directed against a single organization, and, furthermore, that it is opposed to section 9 of article I of the state constitution in that, in its enforcement, its effect would be to abridge the freedom of speech. As to the last stated proposition, the respondent declares that the ordinance, or the particular section thereof involved herein, does not in any manner or form attempt to impinge upon or destroy or impair the right of free speech, as guaranteed by our constitution.

[1] There can be no doubt that the section in question is violative of section 9 of article I of the constitution, guaranteeing to every citizen the right freely to speak, write, and publish his sentiments on all subjects. Furthermore, it clearly involves an invidious discrimination as against a particular organization or society of people. But, however this all may be, the section is so far afield of any reasonable conception of the exercise of the legislative power of this country, as it is defined, qualified, and limited by our constitutions, that the specific ground upon which or rea-

son for which its invalidity is to be declared is of no material consequence. It requires but passing reflection to note that the language of the section is so far-reaching in its scope that its effect would be to penalize the action of a citizen in circulating, distributing, or by other means publishing, or having in his possession, any of the literature or publications issued by and under the authority of a particular organization, setting forth and advocating the principles thereof, howsoever innocent or legitimate such literature or principles and teachings may be. In short, the legislative body of the city of Eureka, in incorporating section 4 in the ordinance in question, seems to have proceeded upon the presumption or presupposition that the organization known as the ''Industrial Workers of the World'' is a combination of persons organized or associated together for the purpose of teaching and advocating the commission of unlawful acts or lawful acts by unlawful methods. [2] The legislative department clearly transcends its constitutional powers, when in the enactment of penal statutes, as in this case, it proceeds upon the theory that an essential element of a crime, whether falling within the category of crimes *mala in se* or that of crimes *mala prohibita*, may be assumed to exist without proof of its existence, save, perhaps, in a few exceptional cases coming within or peculiarly subject to the control of the power of police. If section 4 of the ordinance before us could upon any possible theory be upheld as a valid enactment, the question whether the Industrial Workers of the World constitute a society of persons organized for unlawful or criminal purposes, or the publications or printed documents mentioned in said section set forth and advocated principles which, when executed, would result in the commission of some unlawful act or crime, would not be an issue in the case in the trial of petitioners. In other words, to justify a conviction under the complaint, framed as it is according to the provisions of said section, all that the people would be required to prove would be that the documents or publications set forth the principles of the I. W. W. organization, that the publications were issued by or under the authority of that organization as the teachings and precepts thereof, and that the petitioners had them in their possession or were engaged in selling or otherwise distributing the same. As above suggested, it would not be

material whether the principles so advocated and taught
were in perfect accord with the right of any citizen or set
of citizens to stand for, advocate, and teach any lawful
doctrines or rules or platform of principles relating to any
subject with which either the temporal or spiritual welfare
of mankind is concerned. The trial court could, under said
section, instruct the jury called to try those proceeded
against under said section to the following effect: "If you
find from the evidence, beyond all reasonable doubt, that the
defendants did, at the time mentioned in the complaint,
sell, deliver and possess certain papers and literature pub-
lished and printed for and by the Industrial Workers of
the World . . . which said papers did then and there con-
tain and carry written and printed matter, setting forth, ex-
plaining and narrating the doctrines, teachings, acts and
activities of the Industrial Workers of the World, it will be
your sworn duty to find the defendants guilty." Such a
situation in the trial of a person upon a criminal charge in
an American court would be abhorrent to every conception
of fair play and justice. We do not judicially know, nor is
it within the province of any judicial tribunal, whether of
trial or appellate jurisdiction, so to know, what the specific
nature of the principles or doctrines or propaganda of the
I. W. W. organization is; but if it may be assumed that
those principles or doctrines or propaganda in and of them-
selves have at some time been pernicious in their effect or
opposed to the well-being of society or of mankind, still there
is no presumption that they will always remain so, or that
the said organization has not so changed, modified, or
amended them as to make them accord with a proper under-
standing of the rights guaranteed by our constitutions to
every citizen of this country. This court, however, in the
past has had occasion to review and learn something of the
alleged principles of the I. W. W. organization in cases in-
volving the prosecution and conviction of certain members
of said organization under the state Syndicalism Act, Stats.
1919, p. 281 (*People* v. *Roe,* 58 Cal. App. 690 [209 Pac.
381]; *People* v. *Wismer,* 58 Cal. App. 679 [209 Pac. 259];
*People* v. *La Rue et al.,* 62 Cal. App. 276 [216 Pac.
627]); and, while it is true that those principles disclosed
that said organization and the members thereof entertained
and stood for a paradoxical and singularly drastic notion

of what a system for the government of the peoples of the earth should be—a notion which there is every reason to believe is far beyond any hope of practical attainment—we cannot say that the mere teaching or advocacy of that system is beyond the pale of the constitutional right of any citizen guaranteed to all citizens or organization of citizens to advocate any change in our system of government or any principles antagonistic to our present system of government by peaceable methods. Thus it is to be observed that even if the system proposed to be substituted for our present system of government by the said organization is the same now as it was at the time of the trial and hearing of the cases above referred to, there is nothing in the scheme itself which is inherently wrong or indicative of any criminal purpose in the organization or its members in advocating and teaching the same. But in the Roe and other like cases there was evidence which showed, or sufficiently tended to show to support the conviction, that the members of said organization habitually taught and advocated the carrying out of its principles by criminal means of the most atrocious character, and, as said in that case, this was the fundamental vice of the system advocated by said organization and which justly subjected its members to prosecution and punishment. But there is no necessity for further abstract discussion of the question which is to be determined in this case. [3] The supreme court and this court have held, as obviously it could not otherwise justly be held, that the alleged or claimed criminal or illegal purpose of the I. W. W. organization is an essential element of the crime either of selling or distributing or circulating its literature, containing a statement of the principles of the organization, or of being a member thereof, and that that question is one to be determined by the jury. (See *People* v. *Taylor*, 187 Cal. 378, 385 [203 Pac. 85]; *People* v. *Wismer*, 58 Cal. App. 679 [209 Pac. 259]; *People* v. *Steelik*, 187 Cal. 361 [203 Pac. 78]; *People* v. *Thornton*, 63 Cal. App. 724 [219 Pac. 1020].) [4] The theory of those cases was, as the theory must always be to support a criminal prosecution under the Syndicalism Act, or any valid local ordinance whose general object is the same as that of said act, that the organization in its nature ''is a criminal conspiracy to change industrial

64 Cal. App.—20

control and government by unlawful and criminal methods."
(*People* v. *Steelik, supra.*)

The case here is no different in principle from that of the case of *In re Hartman,* 182 Cal. 447 [188 Pac. 548], wherein the petitioners were convicted of and sentenced to serve a term of 120 days' imprisonment for the violation of the provisions of an ordinance of the city of Los Angeles which provided that any person who displayed or caused or permitted to be displayed, publicly or privately, or had in his possession, within the limits of said city, "any flag, insignia, emblem or device of any nature whatsoever representative of any nation, sovereignty, society, association or organized or unorganized effort of any nature whatsoever which in its purposes, practices, official declarations, or by its constitution, by-laws or regulations, espouses for the government of the people of the United States of America . . . principles or theories of government antagonistic to the constitutions and laws of the United States of America or to the form of the government thereof as now constituted . . . , " shall be guilty of a misdemeanor, punishable by fine or imprisonment or by both. The specific charge against the petitioners in that case was that they unlawfully displayed and had in their possession a flag or an emblem and device representative of "an organized effort antagonistic to the constitution of the United States of America and the form of government thereof." Holding that there was nothing inherently wrong in advocating a principle or theory which is antagonistic to our present constitution and form of government, the supreme court said: "Nothing would seem to be more certain than that the inhabitants of the United States have both individually and collectively the right to advocate peaceable changes in our constitution, laws or form of government, although such changes may be based upon theories or principles of government antagonistic to those which now serve as their basis. And it seems equally certain that an organization peaceably advocating such changes may adopt a flag or emblem signifying its purpose, and that the display or possession of such flag or emblem cannot be made an unlawful act."

It follows from the foregoing considerations that section 4 of Ordinance No. 813 of the city of Eureka is unconstitu-

tional and void and that the petitioners are entitled to be discharged from their present restraint. Accordingly, the writ is granted and the petitioners are discharged.

Plummer, J., and Finch, P. J., concurred.