I concur in the dissenting opinion of Judge KINKADE, and desire to add some further observations upon a case of so much moment to the liberties of the entire people, not only in Ohio, but throughout the United States.
Since criminal syndicalism, as defined in Sections 13421-23 and 13421-24, General Code, applies to the expression of opinion in favor of certain acts "as a means of accomplishing industrial or political reform," we have in this statute a direct attempt to deny the right to express opinion upon social and political questions.
The indictment is brought under that clause of the *Page 194 
statute, and under that clause only, which makes it a felony where one openly, willfully, and deliberately "justifies, by word of mouth or writing, the commission or the attempt to commit crime, sabotage, violence or unlawful methods of terrorism with intent to exemplify, spread or advocate the propriety of the doctrines of criminal syndicalism." The majority opinion ignores this fact, and ignores this part of the statute. It spends its force upon the question of incitement to violence, when the record plainly presents the question of "justification" and the constitutionality of such a restriction upon free speech.
It is proper to consider the indictment and bill of particulars as illustrating the working of the statute. They show concretely that the statute fails to require any relation between the words spoken and the results accomplished. No act was done or charged to have been done by this defendant. It does not appear from the indictment that the words spoken by the defendant were uttered in any public place. They were spoken to exactly two people, one of whom was a government official. Hence the statute is invalid under the doctrine ofSchenck v. United States, 249 U.S. 47, 39 S.Ct., 247,63 L.Ed., 470. See, also, In re Campbell, 64 Cal.App. 300,221 P. 952.
That form of opposition to organized government which has for its aim the substitution by force of some other type of government is and must be legally preventable. Hence enactments prohibiting incitement to the use of violence for the overthrow of the existing government are in their essence constitutional. However, such enactments may not constitutionally overthrow the right to free expression of opinion unless there is an actual incitement to the use of violence. As stated by the United States Supreme Court, speaking unanimously in Schenck v. UnitedStates:
"The question in every case is whether the words used are used in such circumstances and are of such a *Page 195 
nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent."
This defendant, however, was not indicted for any incitement to the use of crime or violence. He was not indicted for obstructing enlistment in wartime. He was not indicted for teaching violence and terrorism. These facts rule out most of the authorities cited in the majority opinion. He was indicted for justifying an act which evidently he never did. If he had done it, it would have been criminal. But he was never indicted for doing the act.
The breadth and scope of that phrase of the criminal syndicalism statute under which this defendant was indicted, namely, "who * * * openly, wilfully, and deliberately justifies, by word of mouth or writing," the acts made unlawful, are such that every one who openly, willfully, and deliberately justifies the things that are done in any inevitable and justifiable revolution as a means of accomplishing political reform is guilty of a felony. The statute has no limitation of time, nor of place, nor of circumstance. It may be violated by justifying the American Revolution or the French Revolution. Intelligent people everywhere in this country during the past few years have constantly openly, wilfully, and deliberately justified by word of mouth violent acts done in Portugal, in Spain, and in other parts of the world, as a means of accomplishing industrial or political reform. Under this statute they are guilty of a felony. Violence was used, actively and constructively, in the American Revolution, by George Washington, Benjamin Franklin, Thomas Jefferson, Alexander Hamilton and James Madison. Neither is it any answer to this proposition to state, as the majority opinion states, that Washington, Franklin, Jefferson, Hamilton and Madison were guilty of treason and could have been punished as traitors. The specific point is that patriotic citizens *Page 196 
have justified, do justify, and will continue rightly to justify their acts. Yet under this statute we are guilty of a felony when we justify their acts, for we are justifying violence as a means of accomplishing political reform.
The majority opinion says that the statute does not seek to punish academic and harmless discussion of the advantages of political and industrial reform. Perhaps it does not seek to, but it does. Moreover, under the sweeping provisions of this act, even peaceful agitation against a law may well be considered a felony. As stated in 29 Yale Law Journal, 339:
"It is somewhat hard to see how the most law abiding citizen can agitate against a law to effect its repeal, without using words that have some possible tendency to induce violation of that law."
The statute is clearly unconstitutional as being in violation of both Section 11 of Article I of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States, which does apply to legislation by the states. It is a far more sweeping statute with reference to this phrase as to justification than certain statutes recently held unconstitutional by the United States Supreme Court.Fiske v. Kansas, 274 U.S. 380, 47 S.Ct., 655, 71 L.Ed., 1108;Stromberg v. California, 283 U.S. 359, 51 S.Ct., 532,75 L.Ed., 1117, 73 A. L. R., 1484; Nearr v. Minnesota, exrel. Olson, County Atty., 283 U.S. 697, 51 S.Ct., 625,75 L.Ed., 1357. The majority opinion ignores this latest decision of the Supreme Court of the United States.
Teaching made unlawful under this statute was constantly indulged in by the fathers of our country. The Declaration of Independence itself states:
"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted *Page 197 
among Men, deriving their just powers from the consent of the governed, That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. Prudence, indeed, will dictate that Governments long established should not be changed for light and transient causes; and accordingly all experience hath shown, that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms to which they are accustomed. But when a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their duty, to throw off such government, and to provide new Guards for their future security. — Such has been the patient sufferance of these colonies; and such is now the necessity which constrains them to alter their former systems of Government."
This was written as an incitement to deeds of violence in the furtherance of political reform.
Under the present Ohio statute, any person who quotes this paragraph of the Declaration of Independence, or any printer who publishes it, is guilty of a felony.
In the long run, as stated by Mr. Justice Holmes with reference to the case of Abrams v. United States,250 U.S. 616, 40 S.Ct., 17, 63 L.Ed., 1173, freedom of the press and of individual opinion, however markedly the views expressed differ from our own, are vital to our social progress. As he says:
"When men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better *Page 198 
reached by free trade in ideas — that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out. That at any rate is the theory of our Constitution. It is an experiment, as all life is an experiment. Every year if not every day we have to wager our salvation upon some prophecy based upon imperfect knowledge. While that experiment is part of our system I think that we should be eternally vigilant against attempts to check the expression of opinions that we loathe and believe to be fraught with death, unless they so imminently threaten immediate interference with the lawful and pressing purposes of the law that an immediate check is required to save the country."