[Crim. No. 4616.   Second Dist., Div. Three.   July 27, 1951.]

THE PEOPLE, Respondent, v. JOHN DIAZ, Appellant.

George Finucane for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

VALLÉE, J.—Appeal from a judgment of conviction of murder of the first degree rendered pursuant to a verdict, and from an order denying the motion for a new trial. Defendant was sentenced to imprisonment for life. His conviction occurred at the third trial after two juries had disagreed.

The sole point urged for reversal is that the trial court committed reversible error in refusing to allow defendant the number of peremptory challenges to which he was legally entitled.

Defendant was 67 years of age. He had lived for eight or ten years on a ranch about 3.2 miles from San Luis Obispo in the home of his nephew Frank Diaz, the latter's wife, daughter Josephine, 17 years of age, and other children. Between 8 and 8:30 p. m. on March 14, 1950, Josephine was killed by a shotgun fired through the window of the Diaz kitchen where she was washing dishes.

At the opening of the trial the court proceeded to impanel a jury. The names of seven jurors were drawn and they took places, designated by seat numbers 1 to 7, in the jury box. The following colloquy then occurred:

"THE COURT: The question has come up concerning the alternate juror. MR. GRUNDELL [District Attorney] : I would not only recommend but suggest that we have an alternate juror at this time. What do you think about it, Mr. Finucane? MR. FINUCANE [Attorney for Defendant]: No objection by the Defendant, Your Honor. THE COURT: I think we'd better have one. The trial will take a good many days. If anything should happen to a juror, we'd lose all the time."

The names of five jurors were next called and they took seats 8 to 12 in the box. The name of a thirteenth juror, Mr. Christian, was then called and he took seat 13. The procedure followed in the selection of the alternate juror was not that prescribed by section 1089 of the Penal Code, which provides for the selection of an alternate immediately after the jury is impaneled and sworn.[1] The court examined the jurors gener-

---

[1] "Whenever, in the opinion of a judge of a superior court about to try a defendant against whom has been filed an indictment or information for a felony, the trial is likely to be a protracted one, the court may issue an entry to that effect to be made in the minutes of the court, and thereupon, immediately after the jury is impaneled and sworn, the court may direct the calling of one or more additional jurors, in its discretion, to be known as 'alternate jurors.' . . . provided, that the prosecution and the defendant shall each be entitled to as many peremptory challenges to such alternate jurors, as there are alternate jurors called."

ally. Several were excused and their places taken by others. Jurors 1 to 6 were examined by counsel for defendant and by the district attorney and passed for cause. Counsel for defendant then began examining Mr. Christian, alternate juror No. 13, when the following occurred:

"Mr. Grundell: Should we take them in order? Mr. Finucane: I'll ask. I don't know. Mr. Grundell: Does it make any difference? The Court: I don't see that it makes any difference, gentlemen. We're going to have thirteen here after you get thru. How you examine them makes no difference to me, if it doesn't to you. Go right thru them."

After the examination of Mr. Christian, alternate juror 13, had been concluded, jurors 7 to 12 were examined for cause. After completion of the examination for cause, the parties exercised peremptory challenges alternately. As his tenth peremptory challenge defendant excused Mr. Christian, alternate juror No. 13, saying, "I'll excuse the alternate juror, Mr. Christian." Mr. Burns took Mr. Christian's place in the box. Mr. Burns was challenged by the district attorney and Mr. Montgomery took his place. After the People had exercised 13 peremptory challenges, and after the defendant had exercised 14, the following occurred:

"Mr. Finucane: May I ask the court for an interpretation of Section 1089, which provides that, in the case of an alternate juror, that the prosecution and the Defendant shall each be entitled to as many peremptory challenges to such alternate juror as there are alternate jurors called. Does that mean that you may only challenge the alternate juror with one challenge, or does that increase the peremptories? The Court: No, I consider him the same as any other juror. I think that he should be subject to every challenge that any other juror is subject to. Mr. Finucane: All right, Your Honor. We'll challenge Mr. Montgomery."

Mrs. Crye took Mr. Montgomery's place in seat 13. After defendant had exercised 20 peremptory challenges—18 to the regular panel and two to alternate jurors—the following occurred:

"The Clerk: That's Defendant number 20. The Court: Number 20. Mr. Grundell: Under that section, do you figure you have another peremptory. Mr. Finucane: Yes, sir; I do. Mr. Grundell: I haven't read it myself. The Court: Yes, if you want to exercise it on the alternate. Mr. Finucane: Well, that was the question I put to Your Honor. I didn't

so understand the ruling. MR. GRUNDELL: I haven't read that section. MR. FINUCANE: That is the second paragraph, I believe, Mr. Grundell. THE COURT: I have in mind the code section all right. MR. FINUCANE: I have exercised one peremptory on an alternate. THE COURT: Yes. MR. FINUCANE: That's right. MR. GRUNDELL: That's what it looks like it's tied down to, George. MR. FINUCANE: I have exercised two on alternates. MR. GRUNDELL: Well, I think you'd have one for as many alternates as you have. THE COURT: I didn't understand my ruling to extend the number of peremptories that you might exercise. MR. FINUCANE: Well, the section certainly anticipates 21 peremptory challenges. THE COURT: Yes, and where there is an alternate involved, I feel the 20 involve him too. I don't think it operates to extend your peremptories beyond the 20. MR. FINUCANE: If the Court rules, I say that's all right. We haven't arrived at that stage yet. THE COURT: No, we haven't come to the problem yet. MR. FINUCANE: No. I don't want to waive my rights under the section.''

After two additional regular jurors were examined, one of whom was excused for cause, the following took place:

''MR. FINUCANE: The defendant will ask to exercise another challenge under that code section. MR. GRUNDELL: I don't believe it's permissible, Your Honor. THE COURT: No. Let the record show that the Court rules that the Defendant has exhausted his peremptory challenges, and has no more to exercise. MR. FINUCANE: Either as to the alternate or as to the regular panel now in the box? THE COURT: Yes. MR. FINUCANE: All right. THE COURT: All right. Will you all please raise your right hand and be sworn.''

The jury was then sworn.

At the close of the People's case, the defendant moved the court ''for a mistrial on the ground that the Defendant has been deprived of a substantial right in regard to the matter of the selection and impaneling of the jury.'' The motion was denied.

If the offense is punishable with death or with imprisonment for life, the defendant is entitled to 20 peremptory challenges to the regular panel. (Pen. Code, § 1070.) If an order is made that one alternate juror be drawn, as was done here, the defendant is entitled to one peremptory challenge to such alternate juror. (Pen. Code, § 1089.)

It is obvious that defendant was denied the right of peremptory challenge given by Penal Code, section 1070. The statute

says that the defendant is entitled to 20 peremptory challenges to the regular panel. He exercised 18 and was denied the right to exercise more. The statute says that the defendant is entitled "to as many peremptory challenges to such alternate jurors as there are alternate jurors called." One alternate juror was to be called. Defendant exercised two peremptory challenges to prospective alternate jurors. He was allowed only 20 peremptory challenges in all. He had a right to 21 in all; 20 to the regular panel and one to the prospective alternate.

Twelve jurors, not 13, were called in the selection of the regular panel. After the 12 regular jurors had been called and has taken their seats in the box, an alternate, Mr. Christian, was called.and took seat 13.[2] The court and counsel for both sides recognized that he was an alternate and not one of the regular panel. Mr. Christian was peremptorily. challenged by defendant. Mr. Burns was then called and took seat 13. Mr. Burns was peremptorily challenged by the People. Mr. Montgomery was then called and took seat 13. Mr. Montgomery was peremptorily challenged by defendant. Mrs. Crye was then called and took seat 13. Neither Mr. Christian nor Mr. Burns nor Mr. Montgomery nor Mrs. Crye was called or examined in the process of impaneling the 12 regular jurors. Neither Mr. Christian nor Mr. Burns nor Mr. Montgomery was challenged in the process of impaneling the 12 regular jurors. They were called, examined and challenged in the process of selecting an alternate. The challenges that defendant exercised on Mr. Christian and Mr. Montgomery were not challenges to one of the regular panel. No one of them was at any time treated as an additional member of the regular panel by either court or counsel. The fact that they were called to seat 13, examined and challenged in the course of impaneling the regular jurors, and were not called after the regular jurors had been impaneled and sworn as prescribed by section 1089, did not make them members of the regular panel. It cannot be said merely because defendant was erroneously allowed two peremptory challenges to alternates when he was only entitled to one that the 13th juror was called in

[2]For clarity we diagram the seating.

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| 7 | 8 | 9 | 10 | 11 | 12 |

13
Christian
Burns
Montgomery
Crye

the selection of the regular panel and not in the selection of an alternate. Having exercised two peremptory challenges on alternates, defendant had no right to peremptorily challenge Mrs. Crye who was the alternate finally selected. The 20 peremptory challenges used by defendant were not used on jurors who would have served as members of the regular panel. Only 18 were so used. Two were used on alternates.

The court denied defendant his right to exercise 20 peremptory challenges to the regular jurors and thereby deprived him of a trial by a fair and impartial jury. The fact that defendant exercised two peremptory challenges to two prospective alternates did not impair his statutory right to 20 peremptory challenges to the regular panel. We are of the opinion that the denial of 20 peremptory challenges to the regular panel was not a mere irregularity but was error which substantially affected the rights of the defendant. The Supreme Court of the United States has said: ''The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused. 'The end of challenge,' says Coke, 'is to have an indifferent trial, and which is required by law; and to bar the party indicted of his lawful challenge is to bar him of a principal matter concerning his trial.' 3 Inst. 27, chap. 2. He may, if he chooses, peremptorily challenge 'on his own dislike, without showing any cause;' he may exercise that right without reason or for no reason, arbitrarily and capriciously. Co. Litt. 156b; 4 Bl. Com. 353; *Lewis* v. *United States*, 146 U.S. 370, 376 [13 S.Ct. 136, 36 L.Ed. 1011, 1014]. Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned.'' (*Pointer* v. *United States*, 151 U.S. 396 [14 S.Ct. 410, 38 L.Ed. 208, 214].)

This is not a case where a defendant took the chance of a trial by regular jurors who he knew had not been impaneled in conformity with the statute and, after an adverse verdict, claimed error; nor is it a case of a defendant leading a trial judge into error, and then complaining of it. Defendant was specifically and definitely told by the court that he would not be allowed more than 20 peremptory challenges to the regular panel and the alternate. It is not a case of a defendant's merely being deprived of a right to exercise a peremptory challenge to the alternate juror who did not participate in the verdict. It is a case of the defendant's being allowed only 18 peremptory challenges to the regular panel

when he was entitled to 20. Under the circumstances, after the court had ruled, defendant was not required, as the attorney general intimates, to peremptorily challenge a particular juror of the regular panel, and thus antagonize the challenged juror, and perhaps others, in order to preserve his right.

■ Where a court has made its ruling, counsel must not only submit thereto but it is his duty to accept it, and he is not required to pursue the issue. (*Pastene* v. *Pardini*, 135 Cal. 431, 433 [67 P. 681]; *San Joaquin L. & P. Co.* v. *Barlow*, 43 Cal.App. 241, 243 [184 P. 899]; *Ballsun* v. *Star Petroleum Co.*, 105 Cal.App. 679, 689 [288 P. 437]; see, also, *Caminetti* v. *Pacific Mut. Life Ins. Co.*, 23 Cal.2d 94, 100 [142 P.2d 741].)

■ Furthermore, it was the duty of the trial judge to safeguard the rights of the defendant. ■ A defendant's fundamental rights are not lost because the trial judge is not familiar with the law. The fact that the alternate juror did not take the place of one of the "original jurors" (Pen. Code, § 1089) magnifies the error.

■ It has been consistently held that the denial of the right of peremptory challenge is reversible error. (*People* v. *Jenks*, 24 Cal. 11, 13; *People* v. *Ah You*, 47 Cal. 121, 122; *People* v. *Kohle*, 4 Cal. 198; *People* v. *Montgomery*, 53 Cal. 576; *Silcox* v. *Lang*, 78 Cal. 118, 123 [20 P. 297].)

■ Respondent contends that section 4½ of article VI of the Constitution applies and that the error was not prejudicial. Defendant contends the provision does not apply. The authorities sustain defendant's position. The constitutional provision reads: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Const., art. VI, § 4½.)

■ The denial of the right of peremptory challenge cannot be said to be a mere matter of procedure. ■ The right is absolute. (*People* v. *Helm*, 152 Cal. 532, 535 [93 P. 99].) It is a substantial right. It has been said that it is one of the chief safeguards of a defendant against an unlawful conviction and that the courts ought to permit its freest exercise within the limitation fixed by the Legislature. (*People* v. *Edwards*, 101 Cal. 543, 544 [36 P. 7].) As said by the Supreme Court of the United States in *Hayes* v. *Missouri*,

120 U.S. 68 [7 S.Ct. 350, 30 L.Ed. 578, 580], experience has shown that one of the most effective means to free the jury box from persons unfit to be there is the exercise of the peremptory challenge. The right may not be abridged or denied. Arbitrary abridgment or denial of the right runs counter to principles vital to the integrity and maintenance of the system of a constitutional right of trial by jury.

The guarantee of the right of trial by jury means an impartial jury. (Cooley's Constitutional Limitations, 8th ed., vol. I, p. 676.) All courts agree that the term "jury" wherever found in the organic law of the land includes the incident that the jury consist of twelve impartial persons— persons who stand indifferent between the parties. " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right of trial by jury guaranteed by the constitution.' " (*People* v. *Harrison,* 13 Cal.App. 555, 558 [110 P. 345]. See, also, *People* v. *Wismer,* 58 Cal.App. 679, 685, 686 [209 P. 259] ; *People* v. *Bennett,* 79 Cal.App. 76, 91 [249 P. 20] ; *People* v. *O'Connor,* 81 Cal.App. 506, 521 [254 P. 630].)

In *People* v. *Carmichael,* 198 Cal. 534 [246 P. 62], the court, referring to article VI, section 4½ of the Constitution, declared, page 547 : "It was never intended by this provision of the constitution to take from the defendant in a criminal action his fundamental right to a jury trial or in any substantial manner to abridge this right (*People* v. *Wismer,* 58 Cal. App. 679, 688 [209 P. 259])."

In *People* v. *Wismer,* 58 Cal.App. 679 [209 P. 259], after the defendant had exercised all of his peremptory challenges, he was compelled to accept a juror who was disqualified by reason of actual bias. The court held, p. 687 : "Section 4½ of article VI of the constitution has no application to the situation presented here. The right of trial by jury is fundamental—a right which came to us from the common law and as such guaranteed by the constitution—and inseparably connected therewith (indeed, it is of the very essence thereof) is the right to a trial by a jury consisting of unbiased and unprejudiced persons. Hence, where, as here, it unquestionably appears that error has been committed in the disallowance of a challenge of a juror for actual bias, and the record discloses nothing indicating that the error was legally cured or in effect waived by the challenging party, the case cannot be saved from the fate of a reversal by an appeal to the terms of said section of the constitution. This provision

was not inserted in the organic law with the purpose of impairing the fundamental rights of the citizen or in any measure hampering the exercise or enjoyment thereof. Indeed, those rights cannot be destroyed or impaired so long as our present system of government exists.''

In *People* v. *Bennett,* 79 Cal. App. 76 [249 P. 20], the court stated, page 91: ''And it should always be remembered that, in the trial of a criminal case, any act or action of a trial court which must necessarily have the effect of denying to the accused a trial by a fair and impartial jury will not be excused or mitigated by the terms of section 4½ of article VI of the Constitution. The right of a trial by jury is fundamental. It is a right which was transmitted to us by the common law and as such is expressly guaranteed by the constitution, and the distinctive quality of that right—its very essence—is that every person put upon trial upon an issue involving his life or his liberty is entitled to have such issue tried by a jury consisting of unbiased and unprejudiced persons. The section of the constitution just mentioned was never intended to impair the exercise of that right, nor, indeed, to embarrass in the least the exercise of any of the fundamental rights of the People. [Citations.] It must also be remembered that there is an obvious distinction between the matter of procedure which the legislature has established for the exercise of the constitutional right to a trial by jury and that right itself.''

In *People* v. *O'Connor,* 81 Cal.App. 506 [254 P. 630], the defendant was denied the right to exercise the number of peremptory challenges to which he was entitled under the statute. It was contended that section 4½ of article VI applied. The court said, page 520: ''As generally defined 'procedure' includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice. (32 Cyc. 405.) Had there been no denial of the exercise of any peremptory challenges, we seriously question whether this section has any application to the cause before us. This section must refer to pleading and procedure, as authorized by the codes. Thus, to make it applicable to the pleadings, had there been any defects in the informations not affecting the substantial rights of the parties, as accorded by law, then, and in that case, the error should be held harmless. Likewise, if the court omitted to follow the procedure embodied by the codes for the arraignment and trial of the defendants upon the informations filed against them and had committed some

error in so doing, which did not affect the substantial rights of the parties, then such error in procedure would likewise be held harmless, but, it cannot reasonably be held that section 4½ of article VI is so broad in its meaning as to permit the trial court to disregard the usual and ordinary procedure in the trial of a cause and adopt a new and entirely different manner from that recognized by law. Such a course is not a mistake in procedure; it is a substitution of procedure. What would excuse a mistake in procedure would not and could not be held to allow the creation of a course unprovided for by law. Mistake is one thing; a substitution is an entirely different thing. As we have said, the defendants were deprived of the right of trial by jury, as it should have been constituted by law, in that they were compelled to go to trial before jurors whom they were entitled to reject, which brings it in principle on a parallel basis with decisions of courts relative to the right of trial by jury. . . . In other words, to give the section of the constitution application, the juror impaneled must be such a juror against whom the defendant has no legal objection and against whom he is not deprived of exercising any legal objection or right accorded him by law.'' (See, also, *Gulf C. & S. F. R. Co.* v. *Shane,* 157 U.S. 348 [15 S.Ct. 641, 39 L.Ed. 727, 730] ; *State* v. *Thompson,* 68 Ariz. 386 [206 P. 2d 1037, 1039, 1040] ; *Benson* v. *State,* 95 Tex.Crim. 311 [254 S.W. 793, 795] ; 24 C.J.S. 884, § 1900; 4 So.Cal.L.Rev. 303, 306; 29 Cal.L.Rev. 74, 76.)

The record discloses that much publicity and notoriety had been given the case and the two previous trials. It was a matter of difficulty on the third trial to secure the fair and impartial jury to which the defendant was entitled. Some 83 prospective jurors were excused by the court for implied or actual bias on its own motion, on stipulation, and on challenges. Further, it is apparent that by the denial of defendant's right of peremptory challenge he was forced to accept persons who were not proper jurors, and was deprived of an opportunity to secure a fair and impartial jury.

One juror whom defendant was compelled to accept had formed an opinion that defendant was guilty, but stated that since reading about the two previous trials ''there is an element of doubt.'' Another juror had sat through the first two trials; had attended the funeral of Josephine; and had gone to the cemetery with a sister of Frank Diaz, at which time the matter ''of how this thing happened'' was discussed. Another juror had read about the case, had formed an opinion as to

the guilt of the defendant, but stated that he had no opinion at the time of the trial.

■ Of the many rights guaranteed to a defendant in a criminal case by the Constitution and the law, none is so important as that he shall be tried by a fair and impartial jury. A defendant is deprived of substantial rights if he has been tried and convicted by a jury which is not fair or impartial. It would be a mockery of justice to submit a cause to an unfair or partial jury. The denial of the right of trial by a fair and impartial jury is, in itself, a miscarriage of justice.

Cases cited by respondent, such as *People* v. *Estorga,* 206 Cal. 81 [273 P. 575], *People* v. *Hoyt,* 20 Cal.2d 306 [125 P.2d 29], and *People* v. *Rambaud,* 78 Cal.App. 685 [248 P. 954], had to do with mere unprejudicial irregularities in the formalities and procedure attending the selection of a jury and are not in point. They did not involve the denial of the right of peremptory challenge. (*People* v. *Bugg,* 79 Cal.App.2d 174 [179 P.2d 346], also cited by respondent is likewise not in point. In that case the court mistakenly told the defendant that he had exhausted his peremptory challenges. There was no intimation, as there was in the present case, that the defendant desired to exercise an additional peremptory challenge or that he would have done so had the mistake not been made. There was nothing to indicate, as there is here, that an objectionable juror had been forced on the defendant. In short, there was no denial of the right of peremptory challenge. Furthermore, the cases to which we have referred were not mentioned.

The judgment and the order denying a new trial are reversed.

Wood (Parker), J., concurred.

SHINN, P. J.—I concur generally in the foregoing opinion, but I think defendant used 19 challenges of regular jurors and not 18. Montgomery was not subject to challenge as an alternate, and since he was excused by defendant that challenge must be counted as one exercised against the regular panel. This, however, is immaterial, since even then defendant would have used only 19 instead of 20 challenges of regular jurors. Mrs. Crye was not subject to challenge, and had to be accepted as the alternate. Defendant was denied his right to exercise his 20th challenge and was convicted by 12 jurors, any one of whom was subject to challenge.

It is as strange as it is deplorable that in this third trial of

a murder case no one was familiar with the Penal Code section which governs the selection of alternate jurors, or took the trouble to read it. Everyone was at fault. Although the full statutory right may be waived, it may not be denied, and here there was no waiver. There is no escape from the fact that a miscarriage of justice resulted and that the judgment and order must be reversed.

A petition for a rehearing was denied August 6, 1951, and respondent's petition for a hearing by the Supreme Court was denied August 23, 1951.