[No. 16587.    Department One.    August 23, 1921.]

THE STATE OF WASHINGTON, *Respondent,* v.
O. KOWALCHUK *et al., Appellants.*[1]

CRIMINAL LAW (137)—EVIDENCE—HEARSAY—DECLARATIONS BY THIRD PERSONS. In a prosecution for sabotage under Laws 1919, ch. 173, a witness, who had been at one time a member of the I. W. W. organization and acquainted with its leaders and organizers, could testify without violating the hearsay rule, as to what the organizers, leaders, and officers taught him were the doctrines and teachings of the organization respecting injury and destruction of the working appliances of the employers for whom the members of the organization might work.

SAME (140)—EVIDENCE—ACTS OF CODEFENDANTS—UNLAWFUL ACTS OF MEMBERS—ADMISSIBILITY. Specific acts of lawlessness committed by members of an unlawful organization, under the direction or with the sanction of its recognized officers or representatives, are admissible in evidence as proofs of its teachings, purposes, and objects.

[1]Reported in 200 Pac. 333.

SAME (225)—TRIAL—RECEPTION OF EVIDENCE—COMPULSORY PRO-
CESS FOR ATTENDANCE OF WITNESSES. In a prosecution for sabotage,
the denial of an application by defendants for the issuance of sub-
poenas for witnesses residing in the state, but outside of the county
of trial, was not a violation of the constitutional right of accused
persons to have compulsory process to compel the attendance of
witnesses in their behalf, where the only showing of the materiality
of such evidence was that the witnesses were librarians having
among their books kept for general circulation certain of the litera-
ture of the I. W. W.

WITNESSES (81)—CROSS-EXAMINATION—IMMATERIAL MATTERS. In
a prosecution for sabotage, committed by defendants as members of
the I. W. W. organization, the refusal to permit defendants to cross-
examine witnesses who testified respecting specific cases of sabotage
by other members of the organization as to whether prosecution
had been instituted against such offenders, did not constitute error,
since it was not material to the inquiry before the court.

Appeal from a judgment of the superior court for
Walla Walla county, Mills, J., entered May 8, 1920,
upon a trial and conviction of sabotage. Affirmed.

*Leslie B. Sulgrove* and *Ralph S. Pierce,* for appel-
lants.

*Earl W. Benson* and *A. J. Gillis,* for respondent.

FULLERTON, J.—The appellants were convicted of the
crime of sabotage, as defined and denounced in ch. 173,
p. 517, Laws of 1919, and appeal from the judgment
and sentence pronounced upon them. In the brief of
counsel, filed in support of the appeal, a large number
of assignments of error are made and discussed, but
on the oral argument many of these were not dwelt
upon, counsel conceding that they had been met and
determined by decisions of this court handed down
prior to the oral hearing, although subsequent to the
preparation of the brief. There were certain of the
assignments which it was contended fell within the rule
of the case of *State v. Gibson,* 115 Wash. 512, 197

Pac. 611. These were urged orally as constituting reversible error, and these only will be noticed.

The first section of the sabotage act makes it a felony to commit wilfully any act which shall injure, interfere with, or obstruct any agricultural, stockraising, lumbering, mining, quarrying, fishing, manufacturing, transportation, mercantile, or building enterprise, wherein persons are employed for wage, or wilfully to destroy or attempt to destroy, or wilfully to derange or attempt or threaten to derange any mechanism or appliance whatsoever used in the pursuit of the enterprises mentioned. The second section makes it a felony unlawfully to take or retain, or attempt or threaten unlawfully to take or retain, any property or instrumentality used in the enterprises enumerated in the first section, with intent to supplant, nullify or impair the owner's management and control thereof. By subd. 1, § 3 (p. 517), of the act it is made a felony to advocate, advise or teach the necessity, duty, propriety or expediency of doing or practicing any of the acts denounced in the two preceding sections; and by subd. 4 (p. 518) of the same section it is made a felony to organize, help to organize, give aid to, be a member of, or voluntarily to assemble with, any group of persons formed to advocate, advise or teach such necessity, duty, propriety or expediency. The appellants were charged with being members of a group of persons known as the Industrial Workers of the World, an organization charged to have been formed to advocate, advise and teach the necessity, duty, propriety, and expediency of doing and practicing the acts made unlawful by the first sections of the act.

To show that the organization named was organized for the unlawful purposes mentioned, the state called as a witness one William Josh. This witness, after

testifying that he was at one time a member of the organization, and acquainted with its leaders and organizers, was permitted to testify, over the objection of the appellants, to the statements and declarations made by these persons to members of the organization as to their duties as such members. Specifically, he testified that members of the organization were instructed by them to do, in all instances, no more work than they were compelled to do to continue on a job, and to do such work as they did, so far as they could, in such a manner as to cause it to be done over again; that, if they were railway employees, it was their duty to lose all the freight possible, and their duty to send such of it as they could to stations to which it was not consigned; that, if they were working in the mills, in other industries, or in the woods, it was their duty to let the steam in the engines operating the power-driven machinery die down, and thereby cause stoppages and delays in the work; to misplace, lose and destroy as many of the working tools as possible, and generally to do anything they could to injure property and "make a hole in the boss' pocket;" the object and purpose being to make the operation of industries unprofitable to their owners, and cause their abandonment, when they could be seized and operated by the workers themselves.

It is objected to this testimony that it is in its nature hearsay, and inadmissible under the general rule excluding testimony of that nature, and specifically so under our decision in the case of *State v. Gibson*, *supra*. Treating the question as an open one, we cannot think the evidence here admitted falls within the ban of the rule invoked. Hearsay evidence is defined in Corpus Juris (22 C. J. 199) as evidence the probative force of which depends, in whole or in part, on

the competency and credibility of some person other than the witness by whom it is sought to produce it. In other words, it is to permit a witness, who has himself no knowledge of a fact, to testify what he heard some other person say, or what some other person told him was the fact. The inquiry here was as to the doctrines and teachings of the organization known as the Industrial Workers of the World, of which organization the defendants were members. The witness testifying was formerly a member of the organization. Manifestly, he could testify as to these doctrines and teachings in so far as they were within his own knowledge, and could testify without violating the hearsay rule, what the organizers, leaders and officers taught him were the doctrines and teachings of the organization. This is to testify to the fact directly, not what some third person stated to him was the fact.

Nor does the case of *State v. Gibson* lay down a different rule. There the question at issue was, in substance, the question at issue here. In making proof of the objects and purposes of the organization known as the Industrial Workers of the World, the state called as witnesses persons not members of the organization, who were permitted to testify what certain other persons, who claimed to be members of the organization, in private conversations, told them concerning its objects and purposes. But it is at once apparent that the witnesses testifying to the facts related were not testifying as of their own knowledge. In this sense their testimony was hearsay, and was held to be within the ban of the hearsay rule. It is plain, however, that the question now before us is not the question there presented. Here the witness did not testify to facts told him by others concerning the doctrines and teachings of the organization, but to facts within his

own knowledge—to matters actually taught by the representatives and officers of the association at authorized meetings of the association held for the purpose of promulgating its doctrines. The case falls within the rule announced in *State v. Pettilla, ante* p. 589, 200 Pac. 332, where it was held that statements and declarations concerning the teachings, purposes and objects of the organization could be shown when made at authorized meetings of the organization, whether private or public, by persons purporting to represent the organization; "and that the witnesses may also testify as to conversations in which are revealed the principles and teachings, the purposes and objects of the organization, with members of the organization, whose membership is shown by competent testimony, and whose membership is proven to be of such a character as to show that it carried with it the authority of the organization to make such declarations as to its purposes, objects, principles and teachings."

Another witness for the state, who was also at one time a member of the organization, was permitted to testify to specific acts of lawlessness while working for a ship-building concern; such as loosening bearing shafts, putting grit into bearings, drilling out rivets inserted in the sheetings forming the sides of a vessel on which they were working, and the like. It is objected to this that it is testimony highly prejudicial in its effects upon a jury, and testimony that is vicious and dangerous if not properly guarded, since any workman, whether a member of the organization or not, may commit such acts, and since a member of the organization may commit the acts, although they be not authorized by the organization, and that here the court did not sufficiently guard the testimony. But we think the trial court exercised all due caution in this respect. It

admitted the testimony only after it was shown that the general literature of the organization taught the duty of committing acts of this kind, after it was shown that such were the teachings at the public and private meetings of the organization, and after it had been specially shown that these specific acts had been agreed upon at a "job meeting" of members of the organization held shortly prior to their commission to devise ways and means for "slowing up the job." It is perhaps unnecessary to add that, where the teachings, objects and purposes of a society, or other organized body of persons, is a question at issue, specific acts committed by the members of the particular organization in question, committed under the direction or with the sanction of its recognized officers or representatives, are admissible in evidence as proofs of its teachings, purposes and objects.

Prior to the trial of the cause, the defendants, through their attorney, sought an order from the trial court directing subpoenas to issue for certain named witnesses residing within the state but outside of the county in which the trial was had. The court denied the application, and it is urged that the appellants were thereby deprived of material evidence necessary for their defense. With respect to one of the witnesses, no showing whatever was made as to what the defendants expected to prove by him. As to the others, it was shown that they were librarians having charge of libraries in which books were kept for general circulation, and that among such books were certain of the literature of the Industrial Workers of the World, which the state would introduce as a part of its evidence to show that that organization taught by its literature the duty of its members to commit acts denounced by the act under which the defendants were informed

against.   In the early cases of *State ex rel. Thurston County v. Grimes,* 7 Wash. 445, 35 Pac. 361, and *State ex rel. Carraher v. Graves,* 13 Wash. 485, 43 Pac. 376, it was held that, while it was the constitutional right of a defendant to have compulsory process to compel the attendance of witnesses in his behalf without advancing fees therefor, he was not entitled to subpoena at the state's expense whomsoever he pleased, but that he must, before he is entitled to such a subpoena, "make a showing in general terms of the materiality of the testimony he expects from the witnesses" for whom the subpoenas are sought.   Following this rule, the trial court denied the application, holding that there was no sufficient showing of the materiality of this testimony.   We find no error in this conclusion.   The fact sought to be shown could have no possible bearing upon the issue the jury were required to determine.

On cross-examination of the witnesses testifying to acts of sabotage, the defendants sought to show that the persons charged with the acts had not been prosecuted therefor.   The court sustained objections to the questions, and complaint is made that, by so doing, the defendants were unduly limited in the cross-examinations of these witnesses.   But plainly there is no error in the ruling of the court.   It might have been material, as bearing upon the credibility of the witnesses testifying to the acts, to inquire whether they had made complaint to the proper authorities of the commission of the act, but to show merely that no prosecution had been instituted against the offenders would prove nothing material to the inquiry before the court.

We find no error in the record, and the judgment appealed from will stand affirmed.

PARKER, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.