[Crim. No. 972.    Second Appellate District, Division One.—September 20, 1923.]

# THE PEOPLE, Respondent, v. FELIX THORNTON, Appellant.

[1] CRIMINAL LAW — CRIMINAL SYNDICALISM ACT — MEMBERSHIP IN I. W. W.—TIME AND PLACE OF BECOMING MEMBER—INSUFFICIENCY OF EVIDENCE.—In a prosecution for a violation of the Criminal Syndicalism Act under an indictment which, in substance, charged the defendant, at a certain time and place, with unlawfully becoming and remaining a member of, and with unlawfully organizing and assisting in organizing, an organization known as the "Industrial Workers of the World," the purpose of which was to teach, aid, and abet the commission of criminal syndicalism and to use force and violence as a means of bringing about a change in industrial ownership or control and political changes in the government, the evidence was insufficient to sustain a conviction of defendant for the crime of becoming a member of said organization in the county in which he was tried, where there was no showing of the time when or the place where he became such a member, it being admitted that he was a member of said organization.

[2] ID. — PROCURING NEW MEMBER — ASSISTANCE IN ORGANIZATION — EVIDENCE.—In such prosecution, the evidence was not sufficient to justify the conviction of defendant of the crime of willfully or at all organizing or assisting in organizing the I. W. W., where the only act shown to have been committed was that of procuring and bringing into the organization a certain person as a member thereof, the society having been completely organized and in existence at and prior to that time.

[3] ID.—BECOMING AND REMAINING MEMBER—PLEADING—SUFFICIENCY OF ALLEGATION.—One who "becomes" and "remains" a member of the organization known as the I. W. W. "is" a member within the intent and meaning of the Criminal Syndicalism Act; and an allegation in an indictment that the defendant "did become and remain" a member is a sufficient compliance with the rules of pleading in such cases made and provided.

[4] ID.—TEACHINGS OF I. W. W.—ABSENCE OF CRIMINALITY—RIGHT OF DEFENDANT TO PROVE.—In such prosecution, in attempting to prove that at the time charged in the indictment and for several years prior thereto criminality in the doctrines, teachings, and methods of action of the I. W. W. was absent, the defendant had the right to ask witnesses if during their association with members of the I. W. W., during their membership, they had heard

any discussion of violence and destruction of property as a means of accomplishing the ends of the organization.

[5] ID.—EVIDENCE—SELF-SERVING STATEMENTS.—In such prosecution, testimony called for by a question asking the witness, "during your association with members of the Industrial Workers of the World, during your membership, have you heard any discussion of violence and destruction of property as a means of accomplishing the ends of that organization?" is not subject to the objection that it was inadmissible as calling for self-serving statements.

[6] ID.—EVIDENCE—CRIMINAL CHARACTER OF ORGANIZATION.—In such prosecution, in order to establish defendant's guilt it was necessary for the state to prove the guilty character of the organization, and for this purpose evidence of its character prior to his membership was admissible, and if accompanied by evidence that during his membership it continued to be an organization of that character, then such evidence would be sufficient to establish his guilt in being a member of the society.

[7] ID. — AFFILIATION OF ORGANIZATION — REJECTION OF OFFERED EVIDENCE.—In such prosecution, objections were properly sustained to defendant's offer of certain evidence tending to prove that the I. W. W. was not affiliated with certain other organizations, where the evidence for the prosecution did not tend to prove the existence of such affiliation.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

R. W. Henderson and L. B. Schlingheyde for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HOUSER, J.—Under the provisions of subdivision 4 of section 2 of the act defining the crime of criminal syndicalism and sabotage and providing penalties and punishment therefor (Stats. 1919, p. 281), defendant was charged by an indictment returned by the grand jury of Kern County with having committed the following offense, to wit: The said Felix Thornton, on or about the third day of June, one thousand nine hundred and twenty-two, at Delano, in the

said county of Kern, state of California, did then and there willfully, unlawfully, knowingly, and feloniously become and remain a member of an organization known and designated as the "Industrial Workers of the World," and sometimes known and designated and referred to as the "I. W. W.," and sometimes known and designated and referred to as the "One Big Union," and did then and there willfully, unlawfully, knowingly, and feloniously organize and assist in organizing said organization known and designated as the "Industrial Workers of the World," and sometimes known and designated and referred to as the "I. W. W.," and sometimes known and referred to as the "One Big Union," and which said organization, society, group, and assemblage of persons was then and there organized to advocate, teach, aid, and abet the commission of criminal syndicalism as a means of accomplishing a change in industrial ownership and control and effecting political changes in the government of the United States.

Defendant was found guilty as charged in the indictment, and he appeals to this court from the judgment, as well as from the order denying his motion for a new trial.

In substance defendant was charged with willfully, unlawfully, knowingly, and feloniously becoming and remaining a member of and with assisting in organizing a group of persons whose purpose was to teach, aid, and abet the commission of criminal syndicalism and to use force and violence as a means of bringing about a change in industrial ownership or control and political changes in the government. It is admitted that defendant was a member of the organization known as the Industrial Workers of the World.

[1]    Since there is no evidence of the time when or the place where the defendant became a member of the I. W. W., the evidence is not sufficient to sustain the conviction of defendant for the crime of becoming a member of that organization in the county of Kern.

[2]    Also, the evidence is not sufficient to justify the conviction of defendant of the crime of willfully or at all or ganizing or assisting in organizing the said I. W. W. The only act shown to have been committed by the defendant under the claim that he assisted in the organization of the society was the act of procuring and bringing into the organization a certain person as a member thereof. The so-

ciety was completely organized and in existence at and prior
to that time. In *People* v. *Thurman,* —— Cal. App. ——
[216 Pac. 394], decided by division two of this district, it
was pointed out that to organize is a very different thing
from extending the limits of the organization or adding to
or increasing its size; that to organize a certain territory
into a municipal corporation is a very different thing from
the act of extending the limits of an organized city over a
new territory. So the court held that the words "assists
in organizing," in their ordinary import, imply that or-
ganization has been effected and that the accused assisted
in accomplishing it. In that case, the evidence was limited
to the fact that the defendant assisted in the distribution
of printed propaganda of this same organization known as
the Industrial Workers of the World. The court said, "even
if the publication and distribution of the printed propa-
ganda had resulted in adding one or more members, such
increment of membership would not have amounted to 'or-
ganizing' the Industrial Workers of the World. Such in-
crease of membership would not alone have sufficed to fur-
nish the body of men known as the Industrial Workers of
the World with organs—a president, secretary, treasurer,
etc.—whereby it would be endowed with the capacity to
function, particularly if it were already endowed with such
functioning organ or media through which its purposes
might be accomplished and its acts performed."

[3] Attention is directed to the language of the indict-
ment herein in that in effect it charges defendant with
knowingly becoming and *remaining* a member of the In-
dustrial Workers of the World—the criticism being that the
statute does not in terms cover the situation of one *"re-
maining"* a member, but in that connection provides as
against one who *"is"* a member. Our interpretation of the
matter in question is that one who "becomes" and "remains"
a member of the organization *"is"* a member within the in-
tent and meaning of the statute, and that an allegation such
as is contained within the indictment against this defendant
is a sufficient compliance with the rules of pleading in such
cases made and provided.

The evidence establishes the fact that on the third day
of June, 1922, in the county of Kern, the defendant was a
member of said society. This is sufficient to sustain his

conviction under that part of the indictment which charged that defendant at that time and place "remained" a member of the organization, if the evidence is also sufficient to prove that said organization was then and there organized "to advocate, teach, aid, and abet the commission of criminal syndicalism as a means of effecting a change in industrial ownership and control and effecting political changes in the government of the United States." By the statute, criminal syndicalism is defined to be "any doctrine or precept advocating, teaching or aiding and abetting the commission of crime, sabotage (which word is hereby defined as meaning willful and malicious physical damage or injury to physical property), or unlawful acts of force and violence or unlawful methods of terrorism as a means of accomplishing a change in industrial ownership or control, or effecting any political change."

On behalf of the people and as tending to prove the truth of the charge, much evidence was introduced concerning the nature and the character of the organization by showing literature, including songs, membership cards, and various pamphlets authorized and distributed by the Industrial Workers of the World; by certain conversations among members of the organization in various meetings thereof; as well as by specific acts of criminal syndicalism and sabotage as defined by the statute; all of which was rebutted by a large volume of somewhat similar opposing evidence on the part of defendant.

[4] As a part of the evidence the prosecution was permitted to introduce the testimony of witnesses who had been members of the society wherein they said that they had been present at meetings of particular unions or local organizations existing within the general society or organization known as the Industrial Workers of the World, at which meetings the use of violent means and destruction of property had been favorably discussed, and that as a result of those discussions, sundry acts of violence, including arson, had been committed. None of these acts occurred on June 3, 1922, or within two years prior to that time. In order to meet this and other evidence relating to the same issue, the defendant called as a witness in his behalf one William Newton, who testified that after he joined the I. W. W. in

1917, he had attended meetings of the organization and had worked in places where other members were employed. Counsel for defendant then asked, "During your association with members of the Industrial Workers of the World, during your membership, have you heard any discussion of violence and destruction of property as a means of accomplishing the ends of that organization?" The district attorney objected to the question as incompetent, irrelevant, and immaterial and as calling for negative testimony. This objection was sustained. The attorney for defendant stated at that time that he proposed or had intended to ask this question of each witness who had been in membership in that organization, and refrained from doing so because of rulings of the court, which had theretofore indicated that the objection would be sustained. The court instructed counsel that "after the court has once ruled, you are not to follow it up."

If the foregoing question had been allowed it might be presumed that the witness would or might have stated that he had heard discussions of the stated subject during meetings of the society, and might have repeated the statements constituting said discussions, and it might have appeared from the testimony that everything that was said on the subject at said meeting or meetings was adverse to the use of any violence or destruction of property whatever as a means of accomplishing the ends of the organization or at all. The plain intention of the defendant was to produce evidence of that character. Counsel for defendant in his opening statement to the jury had said that he proposed to show that while the Industrial Workers of the World were somewhat loose in their methods prior to the year 1918, if the organization permitted certain publications and certain utterances which were of a questionable character, that it had discarded all of those utterances; that its old literature had been burned, destroyed, and withdrawn, and that in its place new literature had been substituted which preaches, advocates, and teaches the doctrine of industrial unionism completely within the law; that the organization has gone on record as repudiating acts of violence.

When the defendant by the evidence offered attempted to make good these promises of his counsel, he surely had the right to produce all legally admissible evidence tending to

prove the absence of criminality in the doctrines, teachings and methods of action of the organization.

On behalf of the prosecution it is claimed that testimony such as that above mentioned to which objections were sustained was inadmissible because the question was too general and did not meet the issue raised by the prosecution. We are rather inclined to believe that the court excluded the testimony under the impression that it was of the nature of self-serving statements made by a co-conspirator, and attempted to be used, as the attorney-general says, to "whitewash" the adverse testimony with such generalities.

[5] We do not think that the testimony was inadmissible as calling for self-serving statements. Like much of the prosecution's evidence, it related to transactions which, so far as the evidence shows, occurred prior to the time of the defendant's membership in the organization. If at the time of those transactions an unlawful conspiracy existed, the evidence does not prove that the defendant was then a member of it. If afterward he became a member of the organization, and if it then was of the criminal character described in the indictment, then he was guilty of the crime charged.

[6] But in order to establish his guilt it was necessary for the state to prove the guilty character of the organization. For that purpose, evidence of its character prior to his membership was admissible, and if accompanied by evidence that during his membership it continued to be an organization of that character, then such evidence would be sufficient to establish his guilt in being a member of the society. (*People* v. *Steelik,* 187 Cal. 361, at pp. 376, 377 [203 Pac. 78].) The character of the organization itself as being one of a criminal or else of a noncriminal nature was a fact to be determined; a fact extraneous to any act of the defendant, but which was necessary to a determination of the guilt or innocence of the defendant in permitting himself to be a member of the organization. If it was competent for the prosecution to prove the criminal character of a general society like the I. W. W. by evidence of discussions occurring at meetings of one or more of its branch organizations, then it seems entirely reasonable and equally competent for the defendant to prove the innocent character of the society by evidence of discussions occurring at and during meetings of such organizations.

[7] The defendant claims that the court erred in sustaining objections to his offer of certain evidence tending to prove that the I. W. W. was not affiliated with the so-called Red International of Moscow or the Red International Trades Union. If the evidence for the prosecution tended to prove the existence of such affiliation, then this evidence on the part of appellant should have been admitted. But we have not yet discovered in the record any evidence on the part of the prosecution tending to establish such affiliation. It does not occur in those portions of the record referred to by counsel. There is evidence referring to the Bolsheviks or the Russian Soviets, and there is evidence in the form of publications issued by the I. W. W. tending to prove the sympathy of that organization with some of the doctrines of the Russian revolutionists or of some one or more of the various organizations of the Russian revolutionists. But that alone in such general form is not a sufficient basis to have entitled appellant to introduce the particular evidence here in question.

On the part of the prosecution it was shown that the I. W. W. some years prior to 1922 published and circulated numerous pamphlets, some of which contained and taught the doctrine of sabotage and advocated violent destruction of property as a means of furthering the purposes of the organization. On the other hand, the defendant introduced in evidence a resolution adopted and published in the year 1919 by the general executive board or central organization of the I. W. W., declaring that the organization "does not now and never has believed in or advocated either destruction or violence as a means of accomplishing industrial reform." Defendant further introduced evidence tending to prove that the publications which most clearly and definitely incited to violence and the use of sabotage, and which prior to the year 1919 had been circulated by or within the organization, had been withdrawn and had been ordered to be burned and in certain instances quantities of them had been burned. In view of this evidence and other evidence contained in the record it must be admitted that there was a strong conflict in the evidence concerning the real character of the organization in question (at any time while defendant was a member thereof) as related to the subject of its teachings, doctrines, and precepts relating to the means of

accomplishing changes in industrial ownership or control or effecting any political change.  We cannot say that the evidence so fully and completely establishes the fact adversely to defendant that the error of the court in excluding further evidence in support of his contentions about that matter was without prejudice to his substantial rights.  And our opinion of this matter cannot be affected by the fact that the decisions of the supreme court of the state in some others of these syndicalism cases indicate that in those cases the evidence did establish the criminal character of the said I. W. W. organization.  Upon an issue of fact we are confined to the record in the particular case before us for decision.  The defendant is entitled to acquittal unless it be first shown by competent evidence in his own particular case, not only that he was a member of the organization, but that its doctrines and teachings were those denounced by the statute.

For the foregoing reasons the judgment and the order denying the motion for new trial are reversed.

Conrey, P. J., and Curtis, J., concurred.