[Crim. No. 731.   Third Appellate District.—March 22, 1924.]

## THE PEOPLE, Respondent, v. ALFRED ERICKSON, Appellant.

[1] CRIMINAL SYNDICALISM ACT—MEMBERSHIP IN I. W. W.—CHAR-
ACTER OF ORGANIZATION — EVIDENCE. — The Criminal Syndicalism
Act does not condemn or proscribe the I. W. W. as an illegal
organization *per se,* hence the mere fact of membership in such
an organization does not, in and of itself, warrant the conclusion
of belonging to an organization seeking to accomplish an indus-
trial change by violence or unlawful means, but the character
of the organization is a question always to be determined.

[2] ID.—CRIMINAL CHARACTER OF ORGANIZATION—HEARSAY EVIDENCE.
In this prosecution for a violation of the Criminal Syndicalism
Act, there being nothing in the I. W. W. literature introduced
expressly advocating violence or unlawful acts denounced by the
statute and there being no testimony of any witness having ac-
tual knowledge of the teachings and acts of that organization
later than about five and one-half years prior to the arrest of
defendant, whereas defendant introduced testimony to the effect
that the organization had discarded sabotage literature and was
no longer seeking or advocating an industrial change by violence
or unlawful means, it was prejudicial error to permit the district
attorney to show the continuing and present character and the
criminal designs and purposes of the organization by hearsay
testimony.

(1) 33 C. J., p. 165, sec. 25.    (2) 33 C. J., p. 165, sec. 26.

APPEAL from a judgment of the Superior Court of Yuba
County.   Ernest Weyand, Judge.   Reversed.

The facts are stated in the opinion of the court.

W. T. Allen for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

PLUMMER, J.—On the twenty-second day of May, 1923,
the defendant Alfred Erickson, while going through the

1. Validity of legislation directed against social or industrial
propaganda deemed to be of a dangerous tendency, notes, 1 A. L. R.
336; 20 A. L. R. 1543.
2. See 10 Cal. Jur. 1033; 10 R. C. L. 958.

town of Marysville on his way to Feather River canyon, was taken from the tender of a passenger train on the Western Pacific Railroad by a night watchman, searched, found to be carrying an I. W. W. membership card and was thereupon arrested under the syndicalism law of this state (Stats. 1919, p. 281), and on the twenty-ninth day of May, 1923, an information was filed against him by the district attorney of the county of Yuba by which information the defendant was charged with "then and there being, did then and there willfully and unlawfully and feloniously and knowingly did become and was a member of an organization, society, club and assemblage of persons known and designated, as the 'Industrial Workers of the World' and sometimes known and referred to as the 'I. W. W.' which said organization, society, club, and assemblage of persons, was then and there organized and assembled to advocate, teach, aid and abet criminal syndicalism as a means of accomplishing a change in industrial ownership and control and affecting political changes," etc.

The defendant was tried upon the information above set forth, convicted, his motion for a new trial was denied and the cause is now before this court on his appeal from the judgment of conviction and the order denying his motion for a new trial.

Three questions are presented for consideration upon this appeal, to wit: the constitutional question presented and dealt with in former cases; the question of essential scienter or knowledge, considered and passed upon in the case of *People* v. *Flanagan*, 65 Cal. App. 268 [223 Pac. 1014], and the admission of hearsay testimony.

The case at bar differs very materially from any of the former cases considered by this court in that none of the literature advocating or suggesting forms of sabotage condemned by the statutes was introduced upon the trial of this action. It is only by conjecture or supposition that such a conclusion could be reached from any of the papers, pamphlets, or books presented to the jury as exhibits. The literature in question purports to set forth the purposes and principles of the I. W. W. and of how its aims and purposes are to be accomplished. This literature makes no express reference to direct action or any manner of violence,

whatever may be said of the visionary or impossible schemes
set forth and contained therein.

We make this statement because, as said, in substance,
in the case of *People* v. *Thornton,* 63 Cal. App. 724 [219
Pac. 1020], every case of this kind must rest upon the char-
acter of the evidence introduced therein. [1] The statute
does not condemn or proscribe the I. W. W. as an illegal
organization *per se,* hence the mere fact of membership in
such an organization does not, in and of itself, warrant the
conclusion of belonging to an organization seeking to ac-
complish an industrial change by violence or unlawful
means. In other words, the character of the organization
is a question always to be determined.

[2] There being nothing in the literature introduced in
this case expressly advocating violence or unlawful action
denounced by the statutes, and, as we have said, only such
conclusion could be arrived therefrom by conjecture, the
ruling of the court upon the admission of other testimony
becomes important.

To show the continuing and present character and the
criminal designs and purposes of the organization, a witness,
Elbert Coutts, was placed on the witness-stand and testified
to certain criminal acts of members of the I. W. W. occur-
ring between January 2, 1913, and December, 1917. It ap-
pears from the transcript that this witness' membership
in the organization ceased with the month of December,
1917. There is no testimony of any witness having actual
knowledge of the teachings and acts of the I. W. W. later
than December, 1917, set forth in the transcript. The de-
fendant introduced testimony to the effect that the organiza-
tion had discarded sabotage literature and was no longer
seeking or advocating an industrial change by violence or
unlawful means. Apparently, to bridge this gap and to es-
tablish the continuance of the unlawful character of the
I. W. W., the following hearsay testimony of Elbert Coutts
was introduced over the objection of the defendant:
"Q. Have you talked with any of the leaders or discussed
the I. W. W. with any of the leaders since 1917? A. Well,
I couldn't say leaders; I talked with one of the men I knew
quite a while, Harry Letour, in Los Angeles, along toward
the latter part of February or first of March, 1922, during
one of these cases down there. Q. Was there anything said

about the teaching of the word sabotage or anything of that character by the organization at the present time? A. I was talking with him quite a while and that was discussed during the conversation. Q. Who was this man Letour, was he one of the speakers? A. Some time before that he had been released from Leavenworth where he was confined for a case tried in Sacramento in 1918 and the beginning of 1919. He was a delegate then, member and delegate. Q. Do you know whether or not he was at the time you talked to him? A. He didn't show me a membership card but showed me a delegate slip at that time there, a sheet of paper, and it had his name on there; very similar to the ones they had during the time I was a member, and told me about his time in Leavenworth and also stated he was a member at that time. Q. What was the date of the delegate's certificate? A. Oh, I don't remember now; I never paid much attention to it. It was familiar to me. Q. You didn't know what date it was? A. I don't remember now; he stated to me at that time he was a member. Q. How long had you known this man? A. I had known him in 1917 when he was Secretary of the I. W. W. in Modesto and met him several years previous to that when he was a member of the I. W. W. and knew him quite well around Modesto and Stockton in 1917 as a member of the I. W. W. Q. Now state what the conversation was. A. At that time he was telling me that I didn't know about the I. W. W.— what I knew about the I. W. W. and what they were doing, that it didn't amount to much of it, and he also told me the I. W. W. still taught sabotage but they didn't carry it on their literature any more but carried it on by word of mouth. By the Court: That part will go out, what he said, what they were doing. Confine yourself to what he said they taught. A. He said they carried on their teaching of sabotage by word of mouth; they had cut it out of the literature, and he told me also—he says he wasn't afraid to tell me this because it would be hearsay testimony at that time. Q. That is what he stated was his conclusion? A. That is what he stated to me was the reason he told me that. Q. As I understand, the only change was that now they were not advocating sabotage in their literature but carried it on by word of mouth? A. Yes, sir.''

It will be noted that this hearsay testimony is not a declaration of a conspirator in furtherance of a conspiracy, and is but a recital of past transactions of the organization and the conclusions of the person with whom the witness Coutts was talking. We have carefully examined the case of *People* v. *Gitlow*, 195 App. Div. 773 [187 N. Y. Supp. 783], and *People* v. *Lloyd*, 304 Ill. 23 [136 N. E. 505], two cases strongly relied upon by the prosecution and we think two of the leading cases having to do with the subject of the introduction of declarations of conspirators in I. W. W. cases, and we find nothing therein which conflicts with the rule heretofore declared in cases decided by this court. The two cases above referred to raise this declaration of the law: "Where a conspiracy is once established, every act and declaration of each member in furtherance of the common design are, in contemplation of law, the act and declaration of all the members and therefore original evidence against each of them." Nothing in the hearsay testimony above referred to comes within the application of this rule. Nothing said by the individual named Letour was in furtherance of any common design or undertaking whatever; it was purely and simply recital.

In the case of *State* v. *Gibson*, 115 Wash. 512 [197 Pac. 611], a case heretofore approved by this court, an almost identical state of facts with those at bar appears: "Over appellants' objections the witness was allowed to detail what Hannon had told him concerning the teachings and purposes and objects of the organization. The witness Fisher testified that he had talked personally to many members of the I. W. W., among others, the Roi sisters, who informed him that they were members of the I. W. W. and had knowledge of the objects and purposes of that organization. Over appellants' objections the court permitted this witness to testify what the Roi sisters had told him concerning the purposes of that organization." Of this testimony the court said: "This was hearsay testimony, and in our opinion the trial court erred in receiving it."

In the case of *State* v. *Pettilla*, 116 Wash. 589 [200 Pac. 332], the same question was presented and the same ruling had. The court in this case states when such testimony is admissible and when it is not. We take the following from the syllabus: "In a prosecution of I. W. W. members for

criminal syndicalism, testimony of witnesses who had talked with persons who they had reason to believe were members, either by discovery of membership cards, or by their declarations, or other facts, as to the purposes, objects, principles and teachings of the organization, is inadmissible as hearsay; but testimony as to statements, speeches, and declarations made by members or in their presence at recognized meetings of the organization, or proven to have received the sanction of the organization, and as to conversations with persons whose membership is shown to be of such a character as to carry with it the authority of the organization to make such declarations, is admissible.'' The same holding is had in the case of *State* v. *Kowalchuk,* 116 Wash. 592 [200 Pac. 333].

In the case of *State* v. *Dingman,* 37 Idaho, 253 [219 Pac. 760], the supreme court of Idaho had occasion to examine the law on this subject and it is there held that the character of the testimony introduced in this case is inadmissible and comes within the rule excluding hearsay testimony. The Washington cases to which we have referred were also cited and considered in the decision rendered by the Idaho supreme court.

In the case of *People* v. *Sullivan,* 59 Cal. App. 633 [211 Pac. 467], the court, in considering the hearsay testimony of one Vale, held as follows: ''This is true of the relation by him of what other persons had told him that they, as members of the I. W. W., had done in the way of acts of sabotage and lawlessness. The ultimate fact which the prosecution was endeavoring to establish was the illegal character, teachings and acts of the I. W. W. This could be shown by literature authorized or issued by it, by witnesses whose past relation to the organization gave them first-hand knowledge, and by testimony of witnesses as to the specific acts of sabotage, arson, and revolution within their own knowledge. (*People* v. *Roe,* 58 Cal. App. 690 [209 Pac. 381].) But to go beyond this and relate purported incidents, not known to the witness, but being based upon statements made to him by others, would clearly be hearsay and as such inadmissible. Authorities cited by respondent do not justify the admission of such evidence.'' The same ruling was had in the case of *People* v. *La Rue,* 62 Cal. App. 276 [216 Pac. 627].

Again, in the case of *People* v. *Flanagan,* 65 Cal. App. 268 [223 Pac. 1014], this court said: "Hearsay evidence, of a character similar to that held to have been erroneously admitted in the case of *People* v. *La Rue, supra,* being declarations of past acts, was admitted over the objections of defendants. In *People* v. *Irvin,* 77 Cal. 494, 504 [20 Pac. 56, 59], it is said: 'Declarations showing past acts, or expressing merely the opinion · or desire of the conspirator making them, are not binding upon anyone except himself, or those in whose presence they are made.' ' Here the cases which we have above cited are also referred to. It is further stated: "The hearsay statements erroneously admitted were not made at any meeting of the organization, or to or by an officer or representative thereof, or in the way of propaganda to further its purposes, but the fact sought to be proved by the declarations were the commission of criminal acts by its members." The Flanagan case was reversed for other reasons, but the rule there declared is applicable here. We think that section 1845 of the Code of Civil Procedure is applicable to this case and that the hearsay testimony heretofore set forth should have been excluded. The rule of exclusion in relation to hearsay testimony and the reasons therefor are very clearly set forth in 10 Cal. Jur., page 1033, beginning with section 288.

Is the error in the admission of hearsay testimony cured in this case by reason of the provisions of section 4½ of article VI of the state constitution? We think not. Without this testimony we do not very well see how a conviction could have been had. As we have shown, there was no other testimony showing the criminal character of the organization since December, 1917. As a matter of fact, the testimony of the witness Coutts did not bring the unlawful acts testified to by him down to that date, and granting that the criminal character of the I. W. W., as it existed prior to that date, was sufficiently established, we are not prepared to hold that the presumption of the continuance of such character is entitled to prevail over the presumption of innocence to which every defendant is entitled under the law and especially is this true when such a long period of time has elapsed between the testimony tending to show such character and the date of the trial, as is evidenced by the transcript in this action.

Objection is also made to the instructions given by the court. These instructions we have examined and find that they conform to the rule laid down in the Flanagan case. The court, at the request of the defendant, instructed that knowledge was an essential ingredient of the crime charged.

For the reason hereinbefore given, the judgment and order of the trial court in this cause will be and the same are hereby reversed and a new trial granted.

Finch, P. J., and Hart, J., concurred.