[Crim. No. 770.   Third Appellate District.—September 13, 1924.]

## THE PEOPLE, Respondent, v. H. B. STEWART et al., Appellants.

[1] CRIMINAL LAW—DEPOSITION OF NONRESIDENT WITNESS—COMMISSION FOR—INSUFFICIENCY OF AFFIDAVIT.—An affidavit for the issuance of a commission to take the deposition of a nonresident witness in behalf of defendants in a prosecution for a violation of the Criminal Syndicalism Act, which affidavit sets forth no facts or circumstances from which the trial court could determine whether the examination of the witness was necessary to the attainment of justice, nor any facts other or further than the conclusion of the affiant that the testimony of the witness was necessary or material, is insufficient under sections 1349, 1352, and 1354 of the Penal Code, and the denial of an application for the issuance of a commission based on such an affidavit furnishes no ground for a reversal of the judgment.

[2] ID.—CRIMINAL SYNDICALISM ACT—MEMBERSHIP IN I. W. W.—IMPROPER RECEPTION OF EVIDENCE—ABSENCE OF MISCARRIAGE OF JUSTICE.—In a prosecution for a violation of the Criminal Syndicalism Act by reason of the membership of defendants in the I. W. W., which, the indictment charged, was organized and assembled to advocate, etc., criminal syndicalism, although certain documents or papers which in no particular tended to show that the advocates of internationalism were assembled to teach, aid, or abet criminal syndicalism, or bring about a political change by violence or terrorism, and which did not bring the advocates of the communistic doctrine relating to home life within the penal provisions of the syndicalism law, should have been excluded from evidence, as also should have been certain testimony reciting what should be done with certain individuals, but not showing that the I. W. W. or any of the defendants proposed to do anything of the kind, error from the reception of such evidence did not result in a miscarriage of justice, where the criminal character of the organization in question was shown by other evidence with sufficient certainty and particularly to call for a verdict of guilty, and, therefore, for the application of the provisions of section 4½ of article VI of the constitution.

[3] ID.—CONSPIRACY—EVIDENCE.—Declarations showing past acts, or expressing merely the opinion or desire of the conspirator making

1.  See 9 Cal. Jur. 441.
2.  See 8 Cal. Jur. 599, 615; 2 R. C. L. 230, 250.
3.  See 5 Cal. Jur. 525; 5 R. C. L. 1089.

them, are not binding upon anyone except himself or those in whose presence they are made.

[4] ID.—VERDICT—EVIDENCE.—In such prosecution, the evidence was sufficient to support the verdict of guilty.

[5] ID.—SABOTAGE—LEGISLATIVE DEFINITION GOVERNS.—In such prosecution, in order to warrant a conviction, the jury must find that the acts of the defendants, or the organization, come within the definition of "sabotage" as given by the legislature, and the fact that other people give other definitions is wholly immaterial.

[6] ID.—ESSENTIALS OF CRIME—KNOWLEDGE—INSTRUCTIONS.—In such prosecution, the failure of the trial court to give two instructions requested by defendants—one setting forth the three material elements necessary to a conviction and the other relating to the knowledge of defendants of the provisions of the Criminal Syndicalism Act and the criminal character of the I. W. W.—did not constitute prejudicial error, although such instructions should have been given.

(1) 18 C. J., p. 639, sec. 89. (2) 17 C. J., p. 321, sec. 3664, p. 368, sec. 3751; 33 C. J., p. 165, sec. 25. (3) 16 C. J., p. 665, sec. 1330. (4) 33 C. J., p. 165, sec. 25. (5) 33 C. J., p. 165, sec. 25. (6) 17 C. J., p. 349, sec. 3706, p. 368, sec. 3751; 33 C. J., p. 165, sec. 25.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. John F. Pullen, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. F. Allen, R. W. Henderson and L. D. Schlingheyde for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendants, together with one C. J. Driscoll were prosecuted under an indictment returned by the grand jury of the county of Sacramento, charging the crime of criminal syndicalism, as follows, to wit: "The said H. B. Stewart, C. J. Driscoll and Pete Wukusitch on the

4.   See 5 Cal. Jur. 506.
5.   See 7 Cal. Jur. 838, 842; 8 R. C. L. 56.
6.   See 8 Cal. Jur. 326, 628, 630; 2 R. C. L. 261.

—— day of December, A. D. 1922, at the County of Sacramento, in the State of California, and before the finding of this indictment were and each of them was, then and there willfully, unlawfully, and feloniously and knowingly a member of an organization, society, group, and assemblage of persons known and designated as 'The Industrial Workers of the World,' sometimes known and referred to as the 'I. W. W.' and sometimes known and referred to as 'One Big Union'; which said organization, society, group, and assemblage of persons was then and there organized and assembled to advocate, teach, and aid and abet Criminal Syndicalism, . . . ''

Upon trial the defendant Driscoll was found not guilty and the appellants guilty. The appellants' motion for a new trial having been denied, an appeal was taken therefrom, and from the judgment of conviction to this court, and is now pending for consideration.

As reasons for a new trial five specifications of error are assigned, to wit:

''First: The trial court erred in denying defendants' application for a commission to take a deposition;

Second: The trial court erred in the reception and exclusion of evidence;

Third: The evidence is insufficient to support the verdict;

''Fourth: The trial court erred in giving and refusing instructions to the jury;

''Fifth: The district attorney was guilty of prejudicial misconduct.''

[1] It appears from the transcript that at a reasonable time before the date set for the trial that an application was made for the issuance of a deposition to take the testimony of a witness residing in the state of Minnesota. The affidavit in behalf of such application is as follows:

''T. F. Allen, being first duly sworn, deposes and says:

''That he is attorney for the defendants in a certain action now pending in the Superior Court of the State of California, in and for the County of Sacramento, wherein the People of the State of California is plaintiff and H. B. Stewart, Pete Wukusitch, and C. L. Driscoll are defendants; that said defendants are prosecuted in said action upon an indictment accusing said defendants of the crime of felony,

to-wit, criminal syndicalism; that the said defendants have, and each of them has, duly pleaded not guilty to the said indictment, and that the said action has been set for trial before the above entitled Court for the 26th day of November, 1923; that an issue of fact has been joined, and issues of facts have been joined upon the said indictment and the said pleas; that Dr. Walter E. List is a material witness in behalf of said defendants in said action and for the presentation of their defense therein; and that the said Dr. Walter E. List resides out of the State of California, to-wit, in the City of Minneapolis, in the State of Minnesota, and affiant verily believes that the said Dr. Walter E. List will not be within the State of California before or during the trial of said action, and that the testimony of said Dr. Walter E. List is and will be material on behalf of the said defendants and without the said testimony said defendants will be unable to fully and fairly present their defense upon the trial of said action.''

This application was denied and the ruling of the court thereon is assigned as error.

Section 1349 of the Penal Code provides: ''When an issue of fact is joined upon an indictment or information, the defendant may have any material witness, residing out of the state, examined in his behalf, . . . '' and then provides the procedure to obtain such deposition. Section 1352 of the same code specifies that the application must be made upon affidavit setting forth the nature of the offense charged, the state of the proceedings in the action, that an issue of fact has been joined, the name of the witness, and that his testimony is material to the defense of the action, and that the witness resides out of the state. Section 1354 of the same code directs that if the court to whom the application is made is satisfied of the truth of the facts stated, and that the examination of the witness is necessary to the attainment of justice, an order must be made for a commission to take his testimony, etc.

Basing their argument upon the case of *People* v. *Lundquist,* 84 Cal. 23 [24 Pac. 153], it is argued that the refusal of the trial court to order the issuance of a commission to take the testimony of Dr. Walter E. List, the witness referred to in the affidavit, was both erroneous and prejudicial.

In the case of *People* v. *Lundquist* the supreme court held
in substance: "The superior court has jurisdiction and is
in duty bound to grant an order for a commission to take
the depositions of witnesses out of the state, to be used in a
criminal case, in behalf of the defendant, when the evidence
sought to be elicited is material and important to the defense,
and the showing made contains all that the statute requires."

The affidavit in the instant case follows the literal word-
ing of the statute. No facts or circumstances are set forth
from which the trial court could determine whether the
examination of the witness referred to was necessary to the
attainment of justice, nor were any facts whatever stated
in the affidavit other or further than the conclusion of the
affiant that the testimony of the witness referred to was
necessary or material. In the Lundquist case, all the pro-
posed testimony to be elicited from the witness to be ex-
amined was set forth in the affidavit. Its materiality and
admissibility plainly appear. It directly bore upon the is-
sues or questions of fact which the defendant sought to
submit to the jury for consideration. In the instant case
there is not a scintilla of evidence, or anything whatever,
from which the court could conclude that the testimony of
Dr. List would either be admissible or material. In the case
of *People* v. *Young*, 108 Cal. 8 [41 Pac. 281], it was held
that where an application was made for the issuance of a
commission to take the deposition of an absent witness, the
prosecution having offered to admit the facts sought to be
proved, the denial of the application for the issuance of a
deposition was proper. Unless the testimony sought to be
elicited from the absent witness is set forth in the affidavit,
the court has no means of being satisfied either of the truth
of the facts stated or that the examination of the witness is
necessary to the attainment of justice. As drafted in this
case, the affidavit for the issuance of a commission to take
testimony substitutes the opinion and conclusion of the affiant
for the determination and judgment of the trial court. In
other words, the affiant says that the issuance of the order
is necessary and the court is given nothing whatever upon
which to exercise its judgment or conclusion except the
opinion and conclusion of the person making the affidavit.
If the construction of the sections referred to, given by the

appellants, is correct, then it is possible and the door will be left wide open to any defendant to force the postponement of trials indefinitely by simply filing affidavits in which it is set forth simply that the affiant verily believes that the testimony of the named absent witness is material. The mere fact that in many counties affidavits for the issuance of foreign subpoenas state nothing but the literal language of the statute, as argued by appellants, has no controlling influence in the determination of the proper construction to be given to the sections of the Penal Code now under consideration, nor can the cases having to do with the sufficiency of affidavits for the issuance of attachments be considered as pertinent, for the simple reason that the issuance of attachments in the first instance calls simply for a ministerial act on the part of the county clerk and *ex-officio* clerk of the court, from which the writ of attachment issues. The instant case is a judicial proceeding and calls for the exercise of judicial discretion, and before that discretion can be exercised it necessarily follows that the facts and circumstances upon which it is to be based must be set forth with sufficient minuteness and detail to admit of, at least, some process of reasoning and not merely the acceptance of the belief of the person making the affidavit for the issuance of a commission to take the testimony of the absent witness. It follows that there can be no abuse of discretion unless there is first presented to the court something upon which its discretion can be exercised. We think the affidavit tendered to the trial court was insufficient in the particulars which we have specified to authorize the issuance of a commission to take testimony, and that the denial of the application furnishes no ground for a reversal of the judgment herein.

[2] We agree with the appellants that the court erred in the reception of testimony, but not with the conclusions sought to be deduced therefrom. It appears that the prosecution, over the objection of the defendants, was allowed to introduce in evidence a certain paper or document issued in 1917, called "The Deadly Parallel." In this document the position of the American Federation of Labor and also the position of the I. W. W. toward possible war with Germany were set forth. The declaration of views set forth by the American Federation of Labor in every word breathes loy-

alty and patriotism, and tendered support without stint or limitation to the government of the United States. The document issued by the I. W. W., opposed war in every form, discounted the nationalistic spirit and strongly advocated internationalism. However objectionable and however much it shows a want of proper spirit that should actuate every citizen of the United States, it in no particular tended to show that its advocates were assembled to teach, aid or abet criminal syndicalism, or bring about a political change by violence or terrorism.

What we have said in relation to this document applies also to that portion of the literature introduced in evidence in relation to the home life as it would exist under the communistic doctrine as taught by the I. W. W., were that system in operation. However much at variance with the accepted ideas governing the home life at the present day, it is not within the penal provisions of the syndicalism law. The views of the I. W. W. on religious matters were excluded and the same ruling should have been made concerning the two documents herein just considered. Their tendency could only be to arouse antagonism or prejudice.

We come next to the consideration of the testimony of the witness Hynes, wherein he was allowed to state in detail a conversation had by the witness at San Pedro, in the state of California, at a considerable period previous to the trial, with one A. W. Sodling, in which the latter, referring to one William E. Townsend, who had testified against the I. W. W. in a number of cases, said: "He should be put out of the way in some way, some of those fellows ought to dump him in the bay, and that applied to Jack Dymond as well." There was some further testimony of this witness along the same lines, but it was all in the nature of recital of what should be done and not that the I. W. W., or any of the defendants in this case, proposed to do anything of the kind. There was nothing to show that it was in anywise connected with, or a part of the conspiracy or alleged conspiracy of the organization maintained by the defendants and others to subvert government by force, violence or terrorism, and under the cases which were considered by this court in the case of *People* v. *Erickson,* 66 Cal. App. 307 [226 Pac. 637], should have been excluded.

**[3]** "Declarations showing past acts, or expressing merely the opinion or desire of the conspirator making them, are not binding upon anyone except himself or those in whose presence they are made." (*People* v. *Irwin,* 77 Cal. 494 [20 Pac. 56].)

Were the foregoing a full statement of all that must be considered by the court in this case, then a reversal of the judgment would necessarily have to be ordered, but the case does not stop here. The evidence, excluding all that we have referred to, brings home to us the fact that the jury under the testimony set out in the transcript could not have brought in any other verdict than the one which was returned as to the two defendants appearing as appellants herein. An abundance of testimony appears from which the jury might come to the conclusion as to the illegal character of the organization and of the illegal character of its purposes and aims and its violation of the penal provisions of the Criminal Syndicalism Law (Stats. 1919, p. 281), as alleged in the indictment. We do not need to set out the testimony in detail. Suffice it to say that the same witnesses appeared in this case as have appeared in former trials, and that the testimony tended to bring the illegal character of the organization down to and including the time when both the appellants admitted the continuance of their memberships therein. Both appellants have been members of the organization for a considerable period of time. One defendant had made a study of the literature of the I. W. W. for a period of some two years, had been a member for a period of some two years, and the other defendant had been a member for a period of between two and three years, and more or less active in the organization. The criminal character of the organization was shown by testimony, other than the hearsay matter to which we have adverted, with sufficient certainty and particularity to call for a verdict of guilty, and, therefore, for the application by the court of the provisions of section 4½ of article VI of the state constitution. We may also add that there was introduced in this case testimony from which the jury might conclude that the I. W. W., as an organization, advocated the Bolshevik tactics applied in Russia, and its attendant horrors, in accomplishing a change of political and economic conditions. The defend-

ants themselves testified that they did not believe in violence. It is probably true that many members of the I. W. W. do not believe in acts of violence, but this does not alter the punitive character of the syndicalism law, or relieve one from the pains and penalties of such membership, if the jury finds the existence of the criminal character of the organization. Lack of criminality of the organization, not lack of knowledge, appears to have been the defense.

[4] The third objection, that the evidence is insufficient to support the verdict, is answered in what we have just said, and calls for no further consideration.

[5] We do not agree with the contention that there should have been any different or additional definition than that contained in the statute of the term "sabotage." The statute defines that term and we think the definition as given by the legislature is the one which should be applied to these cases irrespective of what writers and lexicographers may set forth as expressing their ideas. The statute defines the word "sabotage" as a " . . . willful and malicious physical damage or injury to physical property or unlawful acts of force and violence or unlawful methods of terrorism as a means of accomplishing a change in industrial ownership or control, or effecting any political change." In order to warrant a conviction, the jury must find that the acts of the defendants, or the organization come within that definition, and the fact that other people give other definitions is wholly immaterial. [6] The defendants offered two instructions which, under the ruling of this court in the case of *People v. Flanagan,* 65 Cal. App. 268 [223 Pac. 1014], should have been given, to wit:

"The offense charged in this indictment comprises three material elements. Before you can convict any one of these defendants you must find, to a moral certainty and beyond a reasonable doubt, the existence of each of these elements— that is to say, you must find from the evidence in this case, in order to warrant a conviction of such defendant, first, that the defendants were members of the Industrial Workers of the World in the County of Sacramento, State of California, at or near the date charged in the indictment; second, that at the time such defendant was a member of the Industrial Workers of the World, the Industrial Workers of the World was organized or assembled to teach, advocate, or aid

and abet criminal syndicalism, as that term has elsewhere been defined to you in these instructions; and, third, that at the time such defendant was such member such defendant knew that the Industrial Workers of the World was then and there organized or assembled to do the things above stated. Unless you find the existence of each of these elements from the evidence in this case to a moral certainty and beyond a reasonable doubt, you must acquit such defendant.''

And also the following instruction: ''The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the condemnation of the law. It does not require any knowledge of the unlawfulness of such act or omission; and, so, in this case it is immaterial whether any of these defendants knew, or had reason to know, of the provisions of the Criminal Syndicalism Act. The material thing for you to determine in this respect is whether each defendant at the time he was a member of the Industrial Workers of the World, within three years prior to the date of the finding of this indictment, if you find from the evidence that he was such member, knew that the Industrial Workers of the World was organized for the purpose of advocating, teaching, or aiding and abetting the doctrines and precepts of criminal syndicalism, as the term 'criminal syndicalism' has elsewhere been defined to you in these instructions.''

Instruction number 2 would be clearer if the word ''while'' were inserted after the word ''world,'' so as to read, ''that the defendants were members of the I. W. W. while in the County of Sacramento, State of California, at or near the date charged in the indictment.'' It is probable that the same meaning is imported by the words used, but the insertion of the word ''while'' would make the instruction conform absolutely to the testimony, which showed membership in the organization while the defendants were in the county of Sacramento, and not that they were members of a branch of the I. W. W. organized and located at or in the county of Sacramento.

Was the refusal of the court to give these instructions prejudicial? For the reasons which we have hereinbefore stated, and in view of the testimony which we have referred to, we think not. The testimony shows, as herein stated,

that the defendants had both been members of the I. W. W. for a period of over two years preceding the date of the finding of the indictment against them. That one of the appellants had made a special study of the purposes and aims of the I. W. W. and familiarized himself with its literature, that the other had taken such a part in the proceedings of the I. W. W. and the advocacy of its cause that he must necessarily have known of its purposes and aims and its illegal character, and its objects and aims to accomplish political changes and revolutions by other than peaceable and orderly processes. Thus, again, we are bound by the provisions of section 4½ of article VI of the state constitution, wherein it is provided that: "No judgment shall be set aside or new trial granted in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence . . . unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

The jury could not have concluded that the defendants were ignorant, or wanting in knowledge of the aims and purposes of the I. W. W. organization. Their admitted study and activities were such as to preclude such a finding by the jury. It therefore follows that the failure to give the instructions requested caused no miscarriage of justice. Some minor reasons, including the alleged misconduct of the district attorney, are assigned as error, but we do not deem them of sufficient importance to warrant any further addition to the language of this opinion. The order and judgment appealed from are hereby affirmed.

Finch, P. J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 10, 1924.